RENSELEAR L. MOWRY *vs.* VICTORIA R. SAUNDERS, Admx.

JULY 6, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Appeal and Error.  New Trial.  Direction of Verdict.*

An exception to a refusal to direct a verdict, is waived by a motion for a new trial.

(2)  *Mental Condition of Party to Suit.  Procedure.*

In an action of assumpsit with pleas of general issue and the statute of limitations, the mental competency of plaintiff is not put in issue, and the court properly refused to submit to the jury special issues in respect to such mental condition.

All men of full age are presumed to be of sound mind and competent to attend to business, which presumption continues until overthrown by proof. A party to a suit desiring to inquire into the mental condition of the other party must have resort to appropriate proceedings for that purpose.

(3)  *Evidence.  Question for Jury.*

A request to charge as to what was or was not shown by the evidence was properly refused, that being a matter for the determination of the jury.

**(4)  Bills and Notes.  Interest.**

A request to charge that a promise to pay the notes held by plaintiff was not a promise to pay the interest which had accrued on the notes was properly refused, since a promise to pay the notes was a promise to pay them according to their tenor.

**(5)  Statute of Limitations.  New Promise.**

In an action of assumpsit with plea of statute of limitations evidence considered and *held* to show a new promise.

**(6)  Ambiguity.  Evidence.**

Where an ambiguity exists in a writing introduced in evidence the jury have the right to say in what sense the writer intended the writing to be understood.

ASSUMPSIT.  Heard on exceptions of defendant and overruled.

DUBOIS, C. J.  This is an action of assumpsit brought by the plaintiff against the administratrix of the Estate of Arthur C. Saunders, deceased, to recover the amount due upon five promissory notes, made by the defendant's intestate in his lifetime to the plaintiff.  Besides the counts upon these promissory notes the declaration contained counts for money loaned to and paid to the use of the defendant's intestate.  The defendant pleaded the general issue, and also the statute of limitations.  In his declaration the plaintiff averred promises made within six years before the date of the writ, and by replication the plaintiff made similar replies to the plea.  Upon trial of the action in the Superior Court the jury found for the plaintiff and assessed his damages at $2,014.85, and also found specially "That Arthur C. Saunders in the year 1908 did promise to pay the plaintiff the particular notes in suit."  Thereupon the defendant filed her motion for a new trial upon the grounds that the verdict is contrary to the law and the evidence, that the damages awarded by the jury are excessive and because of evidence newly discovered.  This motion was denied and the defendant took exception to the denial and thereafter duly filed and prosecuted her bill of exceptions, upon which the case is now before this court.

The bill of exceptions reads as follows:

"DEFENDANT'S BILL OF EXCEPTIONS.

"The above entitled case was tried at Woonsocket on the 11th and 12th days of May, A. D. 1910, before the Honorable Christopher M. Lee, a justice of said court, and a jury. At said trial evidence was received and arguments and rulings made, a transcript whereof is filed herewith, and made a part of this bill of exceptions. And the defendant here states certain exceptions taken by her in said case, and relied upon by her, as follows:—

"*First:*—To the refusal by the court to direct a verdict for the defendant, as shown upon page 100 of said transcript.

"*Second:*—To the refusal of the court to submit to the jury the first special issue requested by the defendant, which request was as follows:—

'Was the plaintiff, Renselear L. Mowry, on May 1st, 1908, mentally competent to engage in a business transaction, and to understand the nature and effect of acts performed and words spoken in connection therewith?'

"Said request is found upon page 100 of said transcript, and the ruling and the defendant's exception to said refusal is found upon page 101 of said transcript.

"*Third:*—To the refusal of the court to submit to the jury the second special issue requested by the defendant, which request was as follows:—

'Was the plaintiff, Renselear L. Mowry, between March 18th, 1909, and the date of the filing of his claim in the office of the probate clerk, mentally competent to appoint an agent for the purpose of filing his said claim, and of understanding the nature of such appointment?'

"Said request is found on pages 100 and 101 of said transcript and the ruling and exception on page 101 of said transcript.

"*Fourth:*—To the refusal by the court to grant the defendant's first request to charge, which request, refusal and exception are found upon page 108 of said transcript. Said request is as follows:—

'It is for the jury to say upon all the evidence in this case whether or not the plaintiff was, at the times in the year 1908, that certain promises claimed to have been made by Arthur C. Saunders, and of filing of the claim of said plaintiff in the office of the clerk of the Probate Court, of sound mind, capable of engaging in a business transaction, and understanding the nature and effect of such transaction, and of the acts done and words spoken in connection therewith. If the plaintiff was not so competent, then there was no promise sufficient in law to take the case out of the statute of limitations.'

"*Fifth:*—To the refusal by the court to grant the defendant's second request to charge, which request, refusal and exception are found upon page 109 of said transcript. Said request is as follows:—

'It is for the jury to say upon all the evidence in this case whether or not the plaintiff was at the times between March 18th, 1909, and the date of the filing of his claim in the office of the Probate Clerk, mentally competent and capable of appointing an agent to deal with the said Arthur C. Saunders in regard to notes held by said plaintiff against said Saunders. If the plaintiff was not so competent, then there is no valid filing of the plaintiff's claim in the probate clerk's office.'

"*Sixth:*—To the refusal by the court to grant the defendant's third request to charge, which request, refusal and exception are found upon page 109 of said transcript. Said request is as follows:—

'If the jury find from all the evidence in this case that the plaintiff between March 18th, 1909, and the time of filing of the plaintiff's claim in the office of the clerk of the Probate Court, was not mentally capable of understanding a business transaction and the nature and effect of acts done and words spoken in connection therewith, then the plaintiff was not competent to appoint an agent to file his claim in the office of the clerk of the Probate Court, and there was no valid filing of such claim.'

"*Seventh:*—To the refusal by the court to instruct the jury according to the last sentence of the defendant's fourth request to charge, which request is found upon pages 109 and 110 of said transcript, and the ruling of the court and the defendant's exception are found upon page 110 of said transcript. Said request is as follows:—

'A promise sufficient to revive a debt barred by the statute of limitations must clearly relate to the particular claim to revive which it is relied on. The evidence in this case does not show such a promise, and therefore the verdict must be for the defendant.'

"*Eighth:*—To the refusal by the court to grant the defendant's fifth request to charge, which request, refusal and exception are found upon page 110 of said transcript. Said request is as follows:—

'A promise sufficient to revive a debt barred by the statute of limitations must clearly relate to the particular claim to revive which it is relied on. It is for the jury to say in this case upon the evidence whether any promise which may have been made by Arthur C. Saunders does so clearly relate to the particular claims sued upon.'

"*Ninth:*—To the refusal of the court to instruct the jury in accordance with the last sentence of the defendant's sixth request to charge, which request, ruling and exception are found upon page 110 of the transcript. Said request is as follows:—

'Where there are several claims held by one creditor against the same debtor, a mere general acknowledgment by the latter will not take any of them out of the operation of the statute of limitations or affect its running against them. Therefore under the evidence in this case the debt was not sufficiently identified, and the verdict must be for the defendant.'

"*Tenth:*—To the refusal by the court to grant the defendant's seventh request to charge, which request, refusal and exception are found upon page 111 of said transcript. Said request is as follows:—

' There is nothing in the case to show what amount was agreed upon between the plaintiff and Arthur C. Saunders as owing from said Saunders to plaintiff. Therefore the bar of the statute of limitations as to the claim sued upon is not raised.'

"*Eleventh:*—To the refusal by the court to grant the defendant's eighth request to charge, which request, refusal and exception are found upon page 111 of said transcript. Said request is as follows:—

' In order to revive an outlawed claim by a new promise, such promise must identify the indebtedness claimed to have been revived. The evidence in this case as to a new promise is not sufficient to show any such identification of the indebtedness, and the verdict must be for the defendant.'

"*Twelfth:*—To the refusal by the court to grant the defendant's ninth request to charge, which request, refusal and exception are found upon page 111 of said transcript. Said request is as follows:—

'The evidence in this case does not show whether Arthur C. Saunders intended to pay the face of the notes, or the face of the note with interest according to the tenor of the notes. Therefore the indebtedness is not sufficiently identified, and the verdict must be for the defendant.'

"*Thirteenth:*—To the refusal by the court to grant the defendant's tenth request to charge, which request is found upon pages 111 and 112 of said transcript, and the ruling and exception are found on page 112 of said transcript. Said request is as follows:—

'The evidence in this case does not show a definite promise to pay an ascertained indebtedness, but only an intention to make an adjustment between the parties, the nature of which adjustment was not stated or agreed upon. Therefore, there was no promise sufficient to raise the bar of the statute of limitations, and the verdict must be for the defendant.'

"*Fourteenth:*—To the refusal by the court to grant the

defendant's eleventh request to charge, which request, refusal and exception are found upon page 112 of said transcript. Said request is as follows:—

'Upon all the evidence in this case the plaintiff has not proved that Arthur C. Saunders made a promise sufficient to revive an outlawed claim within six years and sixty days next before the death of Arthur C. Saunders, and therefore the verdict must be for the defendant.'

"*Fifteenth:*—To the refusal by the court to grant the defendant's twelfth request to charge, which request, refusal and exception are found upon page 112 of said transcript. · Said request is as follows:—

'The claim filed in the probate clerk's office is for money loaned and advanced and paid to the use of Arthur C. Saunders. There is no evidence of money loaned and advanced and paid to the use of Arthur C. Saunders, therefore the verdict must be for the defendant.'

"*Sixteenth:*—To the refusal by the court to grant the defendant's thirteenth request to charge, which request is found upon pages 112 and 113 of said transcript, and the ruling of the court and the defendant's exception are found upon page 113 of said transcript. Said request is as follows:

'A promise by Arthur C. Saunders to pay the notes held by plaintiff is not a promise to pay the interest which had accrued on said notes after six years from their respective dates of maturity.'

"*Seventeenth:*—To the denial of the court of the defendant's motion for a new trial, which motion was based upon the following grounds:—

1. That the verdict is contrary to the evidence and the weight thereof.

2. That the verdict is contrary to the law.

3. That the damages awarded by the jury are excessive.

4. That the defendant has discovered new and material testimony since the trial of said case, which was not known to her, and could not with reasonable diligence have been known by her previous to the rendering of the verdict in

said case, as will appear by affidavits to be filed in court.

"To the denial of said motion the defendant duly excepted.

"And the defendant says that the foregoing exceptions entitle her either to a new trial or to judgment for the defendant, and she therefore tenders this her bill of exceptions, and prays that the same may be allowed by the court."

(1) The first exception relates to the refusal of the court to grant the defendant's motion for the direction of a verdict; the incident appears upon the transcript as follows: "Mr. Heffernan: I want to make a special motion to save my rights. I move to direct a verdict for the defendant. THE COURT: The motion is denied. Mr. Heffernan's exception noted." After verdict the defendant made his motion for a new trial, which operated as a waiver of this exception and the same is no longer available,—see *Barstow v. Turner,* 29 R. I. 100. If it had vitality there is nothing in the transcript to warrant the conclusion that there was no evidence in favor of the plaintiff to be submitted to the jury. The motion was therefore properly denied and the defendant takes nothing by this exception.

(2) The second and third exceptions relate to the refusal of the court to submit to the jury for special findings, special issues in respect to the mental competency of the plaintiff on May 1st, 1908, and March 19th, 1909. The justice of the Superior Court presiding at the trial was clearly right in his rulings which are the subject of these exceptions. The mental condition of the plaintiff was not put in issue by the pleadings. All men of full age are presumed to be of sound mind and competent to attend to the ordinary business of life and this presumption continues until it is overthrown by proof. Any party to a suit who desires to inquire into the mental condition or competency of any other party to the suit must resort to proceedings appropriate for that purpose and not inject foreign matters into the issues properly presented for determination by the pleadings in the case. For the same reasons the defendant's fourth, fifth and sixth exceptions must be overruled.

(3)      The seventh exception was taken to the refusal of the court to charge, as follows: "The evidence in this case does not show such a promise and therefore the verdict must be for the defendant." The court properly refused to charge the jury what the evidence showed or did not show; that was a matter to be determined by them. The exception avails nothing.

The eighth exception is untenable. It appears that the court read to the jury the defendant's fifth request to charge and said: "That I have so charged you, gentlemen."

The ninth exception is subject to the same criticism as the seventh, heretofore considered. The request to charge is vicious in that it attempts to curtail the functions of the jury.

The tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth exceptions must be overruled for the same reason.

(4)      The sixteenth exception was taken to the refusal of the court to charge that a promise to pay the notes is not a promise to pay the interest thereon. The court said in regard to this request: "That I decline, I have charged the opposite of that." In this respect the court had charged as follows: "A new promise proved is as valid as the original note. You have only to consider whether or not the promise was made. To prove a new promise it is not necessary to be shown that the word 'promise' was used. I do not think the word 'promise' was used in this case at all. It is not necessary to prove that the word 'promise' was used, but any word signifying intention to pay, or giving assurance that he would pay is sufficient evidence of the new promise. But, gentlemen, an agreement to pay, or signifying the intention to pay, or giving assurance that he would pay, to be sufficient evidence of a new promise, must refer to some particular debt that is owing. After examining all the testimony in the case, if you are satisfied, taking into consideration the oral testimony given by Mr. Mowry's son and daughter, taking into consideration the two letters that have been offered in evidence here, that Arthur C.

Saunders intended to pay these notes, then from those facts you may infer, gentlemen, that he made a new promise to pay these notes. But if, after examining all of the testimony in this case, you are satisfied that he did not intend to pay these notes, why, gentlemen, then your verdict in this case should be for the defendant. Now, gentlemen, if he intended to pay these notes, if the evidence shows he did intend to, if you are satisfied that he intended to pay these notes, and that he promised to pay them, why, he promised to pay the notes, gentlemen, just as they are, as the various notes speak for themselves. There is only one without interest, and that is April 9th, 1890. If you should find for the plaintiff, gentlemen, you should find with interest at the rate of 6% on these two notes from the time they were given, and also interest on all installments of interest in arrear, whether before or after maturity at the same rate till paid. On these three notes you will find simply interest at the rate of 6% from the time they became due and payable." We find no error in the ruling and the exception must be overruled.

The seventeenth, and last exception, was taken to the denial of the defendant's motion for a new trial upon the grounds that the verdict is contrary to the law and the evidence; that the damages awarded are excessive, and for newly discovered evidence. The first and third grounds are untenable. There is nothing to indicate that the jury were not governed in their findings by the law as it was laid down to them by the court. Neither is there any evidence that the jury erred in their computation of the amount due upon the notes in suit. There are no affidavits of newly discovered evidence and that ground may be said to have been abandoned. Whether or not the verdict is against the preponderance of the evidence is the only question left for our consideration. The notes themselves were offered in evidence as follows:

(1)  "A note dated April 9, 1890, for $250, payable in two years to plaintiff with interest at 6% payable semi-

annually in advance, installments of interest in arrears to bear interest at same rate, purporting to be signed by the intestate.

(2) "A note dated April 9, 1890, for $125, payable in two years to plaintiff with 6 % interest, purporting to be signed by the intestate. On this note a payment of $110.50 on July 24, 1894, is indorsed.

(3) "A note dated March 16, 1892, for $150, payable to plaintiff in one year, indorsed by Willis A. Bentley, purporting to be signed by the intestate.

(4) "A note dated April 19, 1893, for $220, payable to. plaintiff in two years, with 6% interest payable semi-annually in advance, installments of interest in arrears to bear interest at the same rate, purporting to be signed by the intestate.

(5) "A note dated August 1, 1893, for $175, payable to plaintiff in four months at National Globe Bank, Woonsocket, R. I., purporting to be signed by the intestate. This note is indorsed by plaintiff, was protested and the plaintiff paid the principal, interest and notary's charges of twenty seven cents."

The testimony relied upon as evidence of a new promise was oral and written. It appeared that the deceased father of Arthur C. Saunders, the intestate, had devised certain real estate to John A. C. Wightman, as trustee for him, and that said trustee deeded the same to said intestate December 31st, 1908, and that Arthur C. Saunders died February 16, 1909. John A. C. Wightman testified, in relation to this claim of Renselear L. Mowry: "I know Arthur C. Saunders told me he did owe them." Laura Mowry Woodman, a daughter of the plaintiff, testified that in May, 1908, the intestate came to the plaintiff's house and stated to her that he wanted to pay up the notes he owed to the plaintiff; that he wanted to pay them just as soon as he came into possession of his property, and he expected to soon. Albert F. Mowry, son of the plaintiff, testified that on May 1st, 1908, Mr. Saunders came to the house and he wanted those

notes he owed father; he wanted to settle them. "I told Mr. Saunders I didn't know exactly where they were but I would look them up." He further testified that he did look them up and found the notes in suit in this case. He repeated that Mr. Saunders said he wanted to settle those notes. He further testified; "Mr. Saunders told me that night before he left, at the depot. I went to the station with him from the house, and the last words he said to me were, 'You hunt those notes and you write me what you find,' and I did. Q. Did you get any answer? A. Yes, sir. Q. And what did you get? A. This is the note I got from him. Q. This paper marked Exhibit G? A. Yes, sir." Exhibit G. reads as follows:

"LAWRENCE, Mass. May 8–08

ALBERT F. MOWRY,

DEAR SIR,—

Yours of the 5th received. You still have missing 1 Mortgage dated Apr. 9–96   1 Bentley note 1 Personal property mortgage, 1 Woonsocket National bank note. If you should see Will Titherington, please tell him that I have written to him and directed to Manville.

A. C. Saunders, 83 Jackson St. Lawrence, Mass."

It also appears that the witness again wrote to Mr. Saunders and received the following letter in reply:

"LAWRENCE, Mass., Oct. 27–08.

Bertie.

I have received your letter and am very sorry that I am unable to help you at present in your difficulty. When I was at your house last I expected to have my father's property turned over to me within a few days, but it has not come yet. Just as soon as I get it, I intend to settle with your father. I am very sorry that I am unable to do so now. Yours truly, A. C. Saunders."

The letters and conduct of the intestate are those characteristic of an honest man about to come into the possession of his property. With full knowledge of his outstanding and long overdue indebtedness he hunted up his creditor,

told of his expectation of being able to pay in the near future and his desire to do so. Not content with a verbal interview concerning his notes, after receiving a list of those found, he hastens to assure his creditor that there are more outstanding. When the necessities of the creditor compel him to remind his debtor that money would be acceptable, he replies, "It has not come yet. Just as soon as I get it, I intend to settle with your father," and expresses sorrow in not being able to do so at the time of writing. The defendant argues that "settle" does not mean "pay." If there is ambiguity in the language the jury had, and undoubtedly exercised, the right to say in what sense the writer intended the writing to be understood. According to Webster's New International Dictionary, among the definitions of "settle" are the following: "5. To adjust, as accounts; to liquidate; to balance. 6. Hence to pay; as, to settle a bill. Colloq." The letter was not written by a lawyer or a literary personage, it was colloquially written and is capable of being colloquially understood. There is no reason to think that the writer had any other thing than payment in view at the time of the writing. Furthermore, he knew exactly what notes he was referring to, when they bore date and when they matured. There could hardly be better evidence of a new promise than that furnished in the case at bar. It would be a pity if it became necessary to frustrate the honest intentions of the defendant's intestate to pay these notes. But it is not necessary. The verdict of the jury is amply supported by the evidence and that verdict has been approved by the justice of the Superior Court who presided at the trial. In these circumstances it is sufficient to suggest that the rule referred to in the case of *Wilcox* v. *The Rhode Island Company*, 29 R. I. 292, is applicable.

For these reasons the defendant's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment on the verdict.

*Charles R. Easton*, for plaintiff.

*James H. Richard, Jr., John J. Heffernan*, for defendant.