HISCOCK v. HISCOCK.

1. MORTGAGES—LIMITATION OF ACTIONS—EVIDENCE—INDORSEMENTS ON MORTGAGE—REVIVAL.

While indorsements on mortgage barred by statute of limitations are admissible in evidence on question of its revival, they are not sufficient to overcome statutory bar in absence of other evidence, but evidence as whole should be clear and decisive of payment (3 Comp. Laws 1929, §§ 13975, 13988).

2. PAYMENT—RECEIPT AS EVIDENCE OF PAYMENT.

Receipt is *prima facie* evidence of payment.

3. MORTGAGES—INDORSEMENT BY MORTGAGEE—PRESUMPTION OF PAYMENT.

Receipt or indorsement by mortgagee retained in his possession raises no presumption of payment in his favor, on question of limitation (3 Comp. Laws 1929, §§ 13975, 13988), but where receipts are found in possession of debtor and apparently prized by him as valuable papers, inference is justifiable that they represent payment of money.

On receipt as evidence of payment as against third parties, see annotation in 29 L. R. A. 737.

4. PAYMENT—POSSESSION OF RECEIPTS—PRESUMPTIONS.

Where mouths of witnesses are closed by death or statute, and better evidence is not obtainable, possession of receipts by debtor raises inference that they evidence payment on debt.

5. SAME—WHEN CHECK PRESUMED TO BE PAYMENT.

Check is presumed to have been given in payment of debt or for money then delivered rather than as loan or gift, unless circumstances indicate otherwise.

6. MORTGAGES—PRODUCTION OF CHECK PRESUMPTION OF PAYMENT.

Production of mortgagor's check to one of mortgagees raises presumption that it was paid on mortgage debt.

7. SAME—PRESUMPTION OF PAYMENT.

Mortgagor's check to one of mortgagees, receipts in mortgagor's possession, and indorsements on mortgage, taken together, constitute evidence of payment on debt, and, in absence of showing of other debts, payment on mortgage debt is presumed.

8. SAME—PAYMENT—REVIVAL OF MORTGAGE BARRED BY LIMITATIONS.

On payment by and to party to mortgage barred by statute of limitations, mortgage itself, not merely personal rights of immediate parties to payment, is revived (3 Comp. Laws 1929, §§ 13975, 13988).

9. SAME—STATUTE OF LIMITATIONS—MORTGAGE TREATED AS UNITY.

Statute of limitations of mortgages evidences no intention to treat mortgage other than as unity, and it begins to operate from time when all sums are finally due under terms of mortgage (3 Comp. Laws 1929, §§ 13975, 13988).

10. LIMITATION OF ACTIONS—PAYMENT PRESUMED TO HAVE FULL LEGAL EFFECT.

When payment is made on debt barred by statute of limitations, it is presumed that the parties intend it to have full legal effect, in absence of facts or circumstances tending to qualify presumed effect.

11. MORTGAGES—STATUTE OF LIMITATIONS—PAYMENT REVIVES INTEREST AS WELL AS PRINCIPAL.

When mortgage debt barred by statute of limitations is revived by payment, the whole of principal and unpaid interest is restored for purpose of foreclosure (3 Comp. Laws 1929, §§ 13975, 13988).

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted October 16, 1931. (Docket No. 126, Calendar No. 35,778.) Decided January 4, 1932.

Bill by Edwin Dorr Hiscock and another against Rhoda B. Hiscock and others and Jay Foster and another to clear title to land of mortgage held by defendants Foster. Cross-bill by defendants Foster against plaintiffs and other defendants to clear title of a mortgage and foreclose their own. Decree for plaintiffs. Defendants Foster appeal. Affirmed.

*Fox & Fox,* for plaintiffs.

*Maxwell B. Allen* and *N. A. Cobb,* for defendants Foster.

FEAD, J. The bill is to clear title to land as against a mortgage held by defendants Foster, with cross-bill by the latter to clear title of a mortgage, claimed to have been barred by the statute of limitations, and deed on foreclosure thereunder. The other defendants are in interest with plaintiffs. Plaintiffs had decree.

November 3, 1885, Seth E. Hiscock and wife executed to his sisters, Jennie M. Hiscock, Rhoda B. Hiscock, Hattie M. Hiscock, and Phebe E. Church, a real estate mortgage for $4,631, due 15 years after date, with interest at seven per cent. per annum, payable annually.

February 23, 1922, Seth E. Hiscock, widower, gave a warranty deed of the premises, free and clear of incumbrances, to take effect at his death, to his sons, Fred D. and Edwin Dorr Hiscock. Seth Hiscock died July 12, 1922.

September 9, 1922, Edwin Dorr Hiscock and wife executed a mortgage on an undivided half of the

premises to Edwin, as trustee of a legacy in trust for the education of his children, which mortgage was discharged of record April 16, 1927. The mortgage was given after Edwin had discovered the receipts and check below mentioned.

November 21, 1923, Fred D. Hiscock and wife gave a mortgage to an undivided half interest in the premises to defendants Foster for $1,500, with interest at seven per cent. The amount due at the time of hearing was $2,000.

The original mortgage from Seth E. Hiscock was foreclosed by advertisement, and, on January 14, 1928, the property was bid in by all the mortgagees, except Jennie, for $16,519.79, the amount computed then due. Plaintiffs claim under a contract of sale from the purchasers.

Many indorsements of payments appear on the original mortgage as of the years before and after it was due, but they were not corroborated by other evidence. So, the statute of limitations became operative against the mortgage in 1915 (3 Comp. Laws 1929, § 13975). It is claimed that certain corroborated payments were made by Seth Hiscock in the years 1917 to 1920 inclusive. They are indorsed upon the mortgage. A short time after the death of Seth, in a desk used by him, and among his deeds, insurance papers, canceled notes and other papers, Edwin and Hattie found four receipts for $100, $300, $327, and $300 respectively, one signed by Phebe Church and three by Rhoda Hiscock, reciting "to apply on mortgage" or "applied on mortgage." They also found a check of August 6, 1918, for $70, by Seth Hiscock to Rhoda Hiscock, indorsed by her and paid through banks, but containing no recital of its purpose. Edwin made some payments in 1924 and 1925.

The first question is whether there was sufficient evidence of payments upon the mortgage to revive it under the statutes, 3 Comp. Laws 1929, §§ 13975, 13988:

"No suit or proceeding shall be maintained to foreclose a mortgage on real estate, either at law or in equity, unless commenced within fifteen years from and after such mortgage shall become due and payable, or within fifteen years after the last payment was made on said mortgage.

"Nothing contained herein shall alter, take away, or lessen the effect of a voluntary payment of any principal or interest, made by any person; but no indorsement or memorandum of any such payment written or made upon any promissory note, bill of exchange or other writing by or on behalf of the party to whom such payment shall be made, or purport to be made, shall be deemed sufficient proof of the payments so as to take the case out of the operation of the provisions of this chapter."

The indorsements made on the mortgage are properly admissible in evidence (*Judson* v. *Pratt,* 208 Mich. 286), although, in the absence of other testimony, they are not sufficient to overcome the statutory bar (*Michigan Insurance Co.* v. *Brown,* 11 Mich. 265). The evidence as a whole should be clear and decisive of payment. *Cowie* v. *Fisher,* 45 Mich. 629.

A receipt is *prima facie* evidence of payment. *Brusseau* v. *Potter's Estate,* 217 Mich. 165. Undoubtedly, a receipt or indorsement by a mortgagee, retained in his possession, would raise no presumption of payment in his favor. But where such receipts are found in the possession of the debtor and apparently prized by him as valuable papers, an inference is justifiable that they represent the payment of money by him because the taking of a re-

ceipt in payment and its preservation are in accord with the usual course of business. Ordinarily such receipts would not be found among valued papers of a mortgagor unless they represent business transactions conducted by him. And where the mouths of the witnesses are closed by death or statute and better evidence is not obtainable, their possession by a debtor raises an inference that they evidence payments on a debt.

A check is presumed to have been given in payment of a debt or for money then delivered rather than as a loan or gift (48 C. J. p. 704), unless the circumstances indicate otherwise. There are no circumstances to the contrary here. The production of the mortgagor's check to one of the mortgagees raises the presumption that it was paid on a debt. *Gerasimos* v. *Estate of Wartell,* 234 Mich. 102; *Stretch* v. *Stretch,* 191 Mich. 416. The check, receipts, and indorsements on the mortgage, taken together, constitute evidence of payment on a debt.

The next question is whether the debt has been sufficiently identified as the mortgage at bar. The record is silent as to whether or not there was any other debt owing by Seth Hiscock to his sisters, or any of them. Where there is proof of indebtedness and of payments, it will be presumed that the payments were made on such indebtedness, in the absence of a showing of other debts. *Gerasimos* v. *Estate of Wartell, supra; Street* v. *Jacobs' Estate,* 239 Mich. 473; *Johnson* v. *Meade's Estate,* 252 Mich. 357. In the latter case the expression of the court, "There is evidence of no other debt," must have meant there was no evidence of any other debt because diligent search of the record has failed to disclose affirmative evidence of lack of other indebtedness. In any event, it was not stressed as necessary to identification of the debt.

Through this presumption, the check, and both by presumption and recitals in them, the receipts, are identified as payments on the mortgage at bar as no other debt or mortgage was shown.

The manner in which Seth and Edwin dealt with the property tends to raise the inference that they thought the mortgage had not been revived, but Edwin's acts merely went to his credibility and were of no effect upon the status of the mortgage, and the circumstances of Seth executing the deed were not shown. In the last analysis, the question is one of the veracity of Edwin and Hattie, who discovered the check and receipts; and, as the circuit court found them entitled to credence, we would not be justified upon this record in rejecting the finding, particularly because of production of the check in the mortgagor's handwriting. We hold the payments proved.

Appellants Foster further urge that, as the mortgagees were tenants in common of the mortgage, payment by one would not revive the mortgage as to the others.

The statute provides that payment on the mortgage fixes the time to foreclose. Upon payment by and to a party to the mortgage, the mortgage itself, not merely the personal rights of the immediate parties to the payment, is revived. *Brown* v. *Hayes,* 146 Mich. 474; *Krause* v. *Spurgeon,* 221 Mo. App. 26 (256 S. W. 1072, 297 S. W. 434).

In reviving the mortgage debt, does payment restore all the interest unpaid or only such as accrues within 15 years before action for foreclosure? There seems to be a paucity of authority upon this precise question. *Mowry* v. *Saunders,* 33 R. I. 45 (80 Atl. 421, Ann. Cas. 1913 A, 1344), holds, but without discussion, that all interest in arrears is revived by

payment on the barred debt. *Vines* v. *Tift & Co.,* 79 Ga. 301 (7 S. E. 227), declares the principle that the acknowledgment of a debt revives or extends the original liability; but the point here was not involved. *Michigan Insurance Co.* v. *Brown, supra,* cannot be accepted as authority on the point, because it did not pass upon it directly, and because of the unexplained discrepancies in the opinion as to times and amounts.

In some States, the whole interest would be revived by payment, because they hold that the interest is an incident to the debt and is not barred until the principal is barred. *Grafton Bank* v. *Doe,* 19 Vt. 463 (47 Am. Dec. 697); *Porter's Admx.* v. *Shattuck's Estate,* 75 Vt. 270 (54 Atl. 958, 98 Am. St. Rep. 823); *DeCordova* v. *City of Galveston,* 4 Tex. 470; *Ferry* v. *Ferry,* 2 Cush. (56 Mass.) 92; *Ade* v. *Ade,* 181 Ill. App. 577.

In other States, it is held that the statute of limitations runs against interest, if payable at a time certain, from the date it is due, even though the statute then may not be operative against the principal. *Dearborn* v. *Parks,* 5 Greenl. (5 Me.) 81 (17 Am. Dec. 206); *Quackenbush* v. *Mapes,* 123 App. Div. 242 (107 N. Y. Supp. 1047); *Heburn* v. *Reynolds,* 73 Misc. Rep. 73 (132 N. Y. Supp. 460); *May* v. *Ball,* 108 Ky. 180 (56 S. W. 7); *Amy* v. *Dubuque,* 98 U. S. 470.

Michigan has approved the latter rule in a case under the statute limiting personal actions to six years after the cause of action "shall accrue." 3 Comp. Laws 1929, § 13976; *McIntire* v. *Conrad,* 93 Mich. 526.

From the latter rule, appellants argue that, had the mortgage been foreclosed immediately before it outlawed, there was collectible on it only the prin-

cipal and interest accruing within 15 years; and, in the absence of specific acknowledgment of liability for the outlawed interest or showing of intent that it be revived, payment restored the mortgage as it stood when barred.

Limitations of real and personal actions are set up separately in the statutes, are governed by different phraseology and periods of time, and a rule applying to one form of action cannot be translated to another without consideration of the differences. The time from which limitation begins to run on a mortgage is "after such mortgage shall be due and payable," not when a cause of action thereon "shall accrue." If instalments of interest may outlaw in advance of the principal, instalments of principal may be barred in advance of the last payment due. Personal action on instalments may be barred by the appropriate statute. But the statute of limitations of mortgages evidences no intention to treat a mortgage other than as a unity, and it begins to operate from the time when all sums are finally due under the terms of the mortgage.

The mortgage statute provides two periods of limitations, but in the alternative and not running concurrently, the latest in point of time to govern. One runs from the due date of the mortgage, and the other from the date of the last payment. If and when the statute takes effect under the former, the whole debt is barred, both principal and interest. Ancient interest is no more dead than recent interest or principal. Thereafter, when payment is made, the former provision becomes wholly inoperative because the latter supersedes it and governs the status of the mortgage. It would require reading into the statute something which is not there, in language or import, to hold that the both provisions may operate concurrently on different parts of the mortgage.

When payment is made on a debt, it is presumed that the parties intend it to have full legal effect, in the absence of facts or circumstances which would tend to qualify the presumed effect. *Neilands* v. *Wright*, 134 Mich. 77.

The effect of a payment, after a personal debt is barred, is:

"The statute does not prescribe what effect part payment of a demand shall have, but it is familiar law that it operates as an acknowledgment of the continued existence of the demand, and as a waiver of any right to take advantage, by plea of the statute of limitations, of any such lapse of time as may have occurred previous to the payment being made. The payment is not a contract; it is not in itself even a promise; but it furnishes ground for implying a promise in renewal from its date, of any right of action which before may have existed." *Miner* v. *Lorman*, 56 Mich. 212, 216.

A voluntary and unqualified payment subsequent to the bar is the best evidence that the debtor does not claim his legal rights, but, on the contrary, intends to waive them and to perform his moral obligation to pay the whole of the just debt.

When a mortgage debt, after it is barred by the statute of limitations, is revived by payment, the whole of the principal and unpaid interest is restored for the purpose of foreclosure.

Judgment affirmed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.