YEITER v KNIGHTS OF ST CASIMIR AID SOCIETY

Docket No. 114185. Decided March 8, 2000. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgments of the trial court and the Court of Appeals and remanded the case to the trial court for further proceedings.

Gerald S. Yeiter brought an action in the Kent Circuit Court against the Knights of St. Casimir Aid Society to recover certain moneys loaned to the society over a period of years. The court, Dennis B. Leiber, J., entered judgment in favor of Mr. Yeiter for three unpaid loans made after February 14, 1989, but ruled that the society was not obliged to repay any loans made before that date, finding that each of the transactions was separate and separable. The Court of Appeals, SAWYER, P.J., and WAHLS and HOEKSTRA, JJ., affirmed in an unpublished memorandum opinion (Docket No. 203036). The plaintiff seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

A partial payment on a loan restarts the running of the limitation period unless it is accompanied by a declaration or circumstance that rebuts the implication that the debtor by partial payment admits the full obligation. It is not accurate to say, as did the Court of Appeals, that a partial payment on a debt begins the limitation period anew only if accompanied by a recognition of the entire debt and an indication of an intention to pay same.

In this case, partial payments were made less than six years before the filing of the complaint, and the payments were unaccompanied by any declaration or circumstance that would rebut the presumption that they were an acknowledgment of the full obligation. Whether Mr. Yeiter's loans were disconnected events, giving rise to a number of separate obligations on the part of the society, or may have been parts of a single debtor-creditor relationship in which the balance rose and fell as transfers were made between the parties, does not affect the resolution of the case. If the loans were separate, all except the December 14, 1988, loan had been fully repaid before the society made its August 28, 1989, payment. Since the only loan outstanding in August 1989 was the December 1988 loan, the August 1989 partial payment started anew the limitation period for that loan. Because the sum of the loan and the loans of 1991 and 1992 is greater than the outstanding balance when the complaint was filed, the application of the statute of limitations to the loans that came before December 1988 is not an obstacle to full recovery.

Reversed and remanded.

*Russell & Batchelor* (by *James W. Batchelor*) for the plaintiff-appellant.

PER CURIAM. After making a series of loans to the defendant, the plaintiff was only partially repaid. He filed suit to obtain the remainder, but the circuit court restricted his recovery by applying the statute of limitations to a portion of the obligation. The Court of Appeals affirmed. We reverse the judgment of the Court of Appeals and reverse in part the judgment of the circuit court. The partial payments, some of which were within the limitation period, renewed the defendant's promise to pay the amount owed.

I

The Society of the Knights of St. Casimir is a charitable organization founded in 1895 at Saint Adalbert's Roman Catholic Parish in Grand Rapids. In a 1974 report to the state of Michigan, its purpose was described in this manner:

> Fraternal mutual benefit aid society for visitation of sick members, assistance in case of sickness and death, and operation of club room for members.

The society has a detailed constitution and body of regulations but, as the circuit court later explained, "the business of St. Casimir's had fallen into irregular reporting and lack of regular accountability." When the society ran low of funds in 1976, then-president Stanley Walsh approached a man named G. Samuel Yeiter for help.[1]

Mr. Yeiter initially agreed to make an interest-free loan of $1,450 to the society. Over the next sixteen years, Mr. Yeiter made additional interest-free loans,

---

[1] Mr. Walsh was president from 1971 until late 1995.

and received a number of partial payments. At no point did the society fully repay Mr. Yeiter.

On the basis of memoranda, checks, and other documents, Mr. Yeiter has assembled this summary of the transactions between the society and him:[2]

| Date | Transaction | Amount | Balance |
| --- | --- | --- | --- |
| August 5, 1976 | Loan | $1,450.00 | $1,450.00 |
| December 22, 1976 | Loan | $2,500.00 | $3,950.00 |
| July 31, 1979 | Loan | $1,800.00 | $5,750.00 |
| January 12, 1979 | Loan | $2,000.00 | $7,750.00 |
| July 1, 1980 | Payment | -$500.00 | $7,250.00 |
| October 8, 1980 | Payment | -$1,000.00 | $6,250.00 |
| January 10, 1981 | Payment | -$1,000.00 | $5,250.00 |
| June 15, 1981 | Payment | -$500.00 | $4,750.00 |
| August 11, 1982 | Payment | -$750.00 | $4,000.00 |
| September 8, 1986 | Payment | -$800.00 | $3,200.00 |
| September 8, 1987 | Loan | $5,200.00 | $8,400.00 |
| January 15, 1988 | Loan | $1,200.00 | $9,600.00 |
| December 14, 1988 | Loan | $25,000.00 | $34,600.00 |
| January 10, 1989 | Payment | -$9,000.00 | $25,600.00 |
| March 3, 1989 | Payment | -$7,000.00 | $18,600.00 |
| August 8, 1989 | Payment | -$3,000.00 | $15,600.00 |
| September 20, 1991 | Loan | $2,800.00 | $18,400.00 |
| October 2, 1991 | Payment | -$2,800.00 | $15,600.00 |
| October 30, 1991 | Loan | $1,800.00 | $17,400.00 |
| January 3, 1992 | Loan | $1,200.00 | $18,600.00 |
| July 28, 1992 | Loan | $15,000.00 | $33,600.00 |

On February 14, 1995, Mr. Yeiter sued the society to recover the $33,600 balance. The society defended the action on several grounds. One was that a portion of the obligation was barred by the six-year limitation period for contract actions. MCL 600.5807(8);    MSA

---

[2] The chart supplied by Mr. Yeiter includes events of August 8, 1989, and October 2, 1991. Other documents in the file suggest that the proper dates might be August 28, 1989, and October 7, 1991.

27A.5807(8). Another was that Mr. Walsh had been without authority to make these arrangements on behalf of the society. The latter defense was accompanied by allegations of wrongdoing on the part of Mr. Walsh, and led to the filing by the society of a third-party complaint against Mr. Walsh and his spouse.

On cross-motions for summary disposition, the circuit court ruled that the society was not obliged to repay any loans that Mr. Yeiter made before February 14, 1989 (six years before the filing of the complaint). In reaching this conclusion, the court said that "each of these transactions by the plaintiff to the defendant was a separate and separable transaction."

After further proceedings, the circuit court entered judgment in favor of Mr. Yeiter for $18,000, the amount of the three unpaid loans made after February 14, 1989.[3] The court later entered a default judgment for $18,000 against the Walshes, the third-party defendants, for failure to appear at a settlement conference.[4]

Mr. Yeiter appealed, asking the Court of Appeals to award the full amount of the arrearage. However, the Court affirmed the circuit court judgment.[5]

Mr. Yeiter has applied to this Court for leave to appeal.

---

[3] We assume that the circuit court applied the October 2, 1991, payment of $2,800 to the September 20, 1991, loan of like amount.

[4] The circuit court added statutory interest and costs to both judgments.

[5] Unpublished memorandum opinion, issued December 1, 1998, reh den February 11, 1999 (Docket No. 203036).

II

Affirming the judgment of the circuit court, the Court of Appeals explained:

> Plaintiff does not contest the trial court's finding that each loan was a separate transaction. A partial payment made on a debt after the debt matures serves to revive the statute of limitations. A new cause of action accrues on the date of payment. *Bonga v Bloomer*, 14 Mich App 315; 165 NW2d 487 (1968); *Alpena Friend of the Court ex rel Paul v Durecki*, 195 Mich App 635; 491 NW2d 864 (1992). However, in order for the statute of limitations to be revived in such a way, the partial payment must be accompanied by a recognition of the entire debt and an indication of an intention to pay same. *Bonga*, 14 Mich App 319. The record does not indicate that the society made any such indication when it made the payment on August 8, 1989.

However, it is not accurate to say, as the Court of Appeals did, that a partial payment on a debt begins the limitation period anew only if "accompanied by a recognition of the entire debt and an indication of an intention to pay same." Indeed, the opposite is true— a partial payment restarts the running of the limitation period unless it is accompanied by a declaration or circumstance that rebuts the implication that the debtor by partial payment admits the full obligation.[6]

---

[6] We accept the summary provided by the authors in 20 Michigan Law & Practice, Statute of Limitations, § 12, pp 560-564. They caution that "[p]art payment of a debt barred by the statute of limitations does not remove the bar, if accompanied by any fact or circumstance inconsistent with a promise to pay the remainder." *Id.*, p 561. However, they further state:

> Partial payment [on a debt] is equivalent to a new promise, and operates as an acknowledgment of the continued existence of the demand and as a waiver of any right to take advantage by plea of

This rule is at least as old as *Miner v Lorman*, 56 Mich 212, 216; 22 NW 265 (1885). Though other aspects of *Miner* led this Court to conclude that the plaintiff could not prevail in his suit, Justice Cooley's opinion for a unanimous Court included this explanation:

> The statute does not prescribe what effect part payment of a demand shall have, but it is familiar law that it operates as an acknowledgment of the continued existence of the demand, and as a waiver of any right to take advantage, by plea of the statute of limitations, of any such lapse of time as may have occurred previous to the payment being made. The payment is not a contract; it is not in itself even a promise; but it furnishes ground for implying a promise in renewal from its date, of any right of action which before may have existed.

The Supreme Court frequently has restated this principle. In *Hiscock v Hiscock*, 257 Mich 16, 25; 240 NW 50; 78 ALR 953 (1932), a dispute concerning payments on a mortgage, the Court said:

> A voluntary and unqualified payment subsequent to the bar [of the statute of limitations] is the best evidence that the debtor does not claim his legal rights, but, on the contrary, intends to waive them and to perform his moral obligation to pay the whole of the just debt.

With little discussion, the principle was applied in *Wagner v Kincaid*, 291 Mich 262, 266; 289 NW 154 (1939). To the same end, we explained in *Collateral Liquidation, Inc v Palm*, 296 Mich 702, 704; 296 NW

---

limitations of any such lapse of time as may have occurred previous to the payment being made.

Part payment even after the bar of the statute of limitations is complete revives the balance of the debt. [*Id.*, pp 563-564.]

846 (1941), that "[t]he effect of the payment under the statute is equivalent to a new promise." And in *Beaupre v Holzbaugh*, 327 Mich 101, 107-108; 41 NW2d 338; 27 ALR2d 532 (1950), this Court said, "In the absence of any showing that payment was not intended by the parties to imply a new promise to pay, the statute was tolled by the payment and the note was not outlawed when suit was begun."

In recent years, the Court of Appeals has likewise applied this rule. *Alpena Friend of the Court ex rel Paul v Durecki, supra* at 638; *Federal Deposit Ins Corp v Garbutt*, 142 Mich App 462, 468; 370 NW2d 387 (1985); *Bonga, supra* at 319.[7]

The present case falls squarely within this principle. Partial payments were made less than six years before the filing of the complaint, and these payments were unaccompanied by any declaration or circum-

---

[7] In the present case, the Court of Appeals cited *Bonga* in support of its statement that "in order for the statute of limitations to be revived in such a way, the partial payment must be accompanied by a recognition of the entire debt and an indication of an intention to pay same." However, the pertinent passage of *Bonga* does not say that:

[T]he trial court found that a payment was made on the note on July 15, 1960, a fact admitted in defendants' answer as well as in the September 14, 1960, letter to the creditors. The court properly concluded that the statute of limitations began to run as of the date of payment, July 15, 1960, and that this action commenced October 8, 1965, was not barred.

Two months after the unqualified payment by way of assignment of accounts receivable, defendants attempted to qualify said payment. A qualification must be made at the time of the partial payment. If this were not true, it would be possible for one to make a partial payment and intend to pay the balance at a later date, but in the interim, change his mind and effectively renege. To allow this would be to permit chaos in the legal and business world. [14 Mich App 319.]

stance that would rebut the presumption that they were an acknowledgment of the full obligation.

III

A potential factual issue is whether Mr. Yeiter's loans were disconnected events, giving rise to a number of separate obligations on the part of the society. Alternatively, the loans and repayments may have been parts of a whole—a single debtor-creditor relationship in which the balance rose and fell as transfers were made between the parties.

While the record would seem to suggest that the latter characterization is more accurate, the matter is settled. As indicated, the circuit court found that "each of these transactions . . . was a separate and separable transaction." At one point in its oral opinion, the court also found inapplicable the analogy of "a revolving line of credit." In Mr. Yeiter's brief to the Court of Appeals, he included the flat statement, "Mr. Yeiter is not disputing the [circuit court's] finding that each loan was a separate transaction for purposes of application of the statute of limitations."[8]

In the end, this question does not affect the resolution of this case. If these indeed were separate loans, then all except the December 14, 1988, loan of $25,000 had been fully repaid before the society made its August 8, 1989, payment of $3,000. Since the only loan outstanding in August 1989 was the December 1988 loan, the August 1989 partial payment started

---

[8] Despite the concession, parts of Mr. Yeiter's presentation were framed as though he did not accept the characterization of the loans as separate transactions. For instance, his chart of the loans and payments, reproduced above, shows a running balance.

anew the limitation period for that loan, as explained in part II of this opinion. Because the sum of the $25,000 loan and the loans of 1991 and 1992 is greater than the outstanding balance when the complaint was filed ($33,600), the application of the statute of limitations to the loans that came before December 1988 is not an obstacle to a full recovery for Mr. Yeiter.

For these reasons, we reverse the judgments of the circuit court and the Court of Appeals, and we remand this case to the circuit court for further proceedings that are consistent with this opinion. MCR 7.302(F)(1).

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.