# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

FISHER SAND AND GRAVEL COMPANY v NEAL A SWEEBE, INC

Docket No. 143374. Argued January 9, 2013 (Calendar No. 1). Decided July 30, 2013.

On August 13, 2009, Fisher Sand and Gravel Company brought an action in the Midland Circuit Court against Neal A. Sweebe, Inc., asserting claims for breach of contract, account stated, and unjust enrichment with regard to concrete supplies plaintiff provided to defendant. Plaintiff filed an amended complaint on October 29, 2009, that added a claim for amount owed on an open account. Plaintiff had provided concrete supplies to defendant from October 1991 through October 2004 and had issued invoices, and defendant had made sporadic payments toward the accrued balance. On May 9, 2005, defendant received a delivery of goods from plaintiff, and plaintiff issued an invoice for $152.98. On May 13, 2005, defendant made a payment of $152.98. That was the last time that defendant made any payment to plaintiff. Defendant moved for summary disposition, contending that the action was barred by the four-year limitations period in the Uniform Commercial Code (UCC) pertaining to contracts for the sale of goods, MCL 440.2725(1). Plaintiff contended that defendant's obligation to pay on the open account was an obligation that was distinct from the underlying contract for the sale of goods and that the action was governed by the general six-year limitations period applicable to actions for breach of contract contained in the Revised Judicature Act (RJA), MCL 600.5807(8). The court, Michael J. Beale, J., agreed with defendant and granted its motion for summary disposition. Plaintiff appealed the dismissal of its account-stated and open-account claims. The Court of Appeals, OWENS, P.J., and METER, J. (O'CONNELL, J., dissenting), affirmed, concluding that the UCC's four-year limitations period was applicable to both plaintiff's open-account and account-stated claims. 293 Mich App 66 (2011). The Supreme Court granted leave to appeal. 491 Mich 914 (2012).

In an opinion by Justice ZAHRA, joined by Chief Justice YOUNG and Justices CAVANAGH, KELLY, and MCCORMACK, the Supreme Court *held*:

Because actions on an open account and actions on an account stated are distinct and independent from the underlying transactions giving rise to the antecedent debt, neither action is governed by the four-year limitations period provided in § 2725 of the UCC, MCL 440.2725. Rather, both actions are governed by the general six-year limitations period applicable to actions for breach of contract contained in the RJA, MCL 600.5807(8).

1. Michigan law has recognized a number of collection actions, including open-account claims, mutual-and-open-account-current claims, and account-stated claims, but Michigan law

concerning these claims has not always been clear. An open account is one that consists of a series of transactions and is continuous or current, and not closed or stated. An account stated is a contract based on assent to an agreed balance, and it is an evidentiary admission by the parties of the facts asserted in the computation and of the promise by the debtor to pay the amount due. An open account may be converted into an account stated, and whether that conversion has occurred will depend on the facts.

2. "Account stated" is an expression to convey the idea of a contract, having an account for its consideration, and is no more an account than is a promissory note, having a like consideration for its support. It requires the manifestation of assent by both parties to the correctness of the statement of the account between them. Assent may be inferred from a party's inaction; as against a party receiving an account, and not objecting to it within a reasonable time, its correctness may be considered as admitted. It is not necessary, in support of an account stated, to show the nature of the original transaction, or indebtedness, or to give the items constituting the account. Rather, an action on an account stated is an independent cause of action, separate and distinct from the underlying transactions giving rise to the antecedent debt. Therefore, contrary to the opinion of the Court of Appeals in this case, in an account-stated action it is immaterial whether the underlying transactions involved the sale of goods. Because the language of MCL 440.2725 plainly states that it only applies to actions for breach of contract for the sale of goods, and an action on an account stated is an action on a promise to pay a certain amount that has nothing to do with any underlying sales transactions, MCL 440.2725 does not apply to an action on an account stated. Rather, it being established that an account stated is a contract based on assent to an agreed balance, an action on an account stated is subject to the six-year limitations period governing general contract actions provided in MCL 600.5807(8). An account-stated claim accrues when assent to the statement of account is expressed or implied. Having erroneously concluded that plaintiff's account-stated claim was time-barred, the trial court did not consider whether defendant had properly objected to plaintiff's statement of the account. The case had to be remanded for consideration of whether defendant assented to plaintiff's statement of the account.

3. In an action on an open account, there is no assent to the balance due. Thus, the creditor may be required to establish the validity of the entries in the account. When an integral component of a transaction for goods or services is an express agreement for the periodic payment of money, an open-account claim cannot be established by the mere performance or nonperformance of the contract obligation. Under those circumstances, the creditor's remedy is to timely pursue a breach of contract action when the debtor fails to live up to the terms of the underlying agreement. When the credit relationship is not defined as an integral part of the transaction for goods or services, and instead arises from a course of dealing between the parties, an open-account claim may arise by implied contract. With regard to the limitations period applicable to open-account claims, the language of MCL 440.2725 plainly states that it only applies to actions for breach of contract for the sale of goods. An open-account claim is not based on a breach of contract for the sale of goods; it is an action to collect on the single liability stemming from the parties' credit relationship regardless of the underlying transactions comprising the account. The Court of Appeals erred by holding that the four-year limitations period provided in MCL 440.2725 applies to actions on an open account. An open-account claim, like an account-stated claim, is premised on an express or implied contract and is subject

to the six-year period of limitations governing general contract actions set forth in MCL 600.5807(8). An open-account claim generally accrues on the date of each item proved in the account. Those items are severally barred when as to them the statute has run. A partial payment on an account restarts the running of the limitations period unless it is accompanied by a declaration or circumstance that rebuts the implication that the debtor by partial payment has admitted the full obligation. In this case, it was unclear whether an integral component of the parties' transactions was an express agreement for the periodic payment of money, and the trial court was directed to decide that issue on remand. The trial court was also directed to revisit its determination that defendant's May 13, 2005, payment was disconnected from the other transactions comprising the account. If that payment or any other payment within the six-year period preceding commencement of this case operated to renew defendant's promise to pay its entire indebtedness to plaintiff, plaintiff's open-account claim was timely commenced within the six-year limitations period provided in MCL 600.5807(8).

Judgment of the Court of Appeals reversed; case remanded to the trial court for further proceedings.

Justice MARKMAN, concurring in part and dissenting in part, agreed with the majority that plaintiff's account-stated claim was subject to the six-year limitations period governing general contract actions set forth in MCL 600.5807(8), but disagreed with the majority that plaintiff's open-account claim was subject to the same six-year limitations period governing general contract actions. Justice MARKMAN concluded that the UCC's four-year limitations period, MCL 440.2725, applies to an open-account claim where the balance owed on the open account arose from the underlying sale of goods as it did in this case. The presence in an account-stated claim of an independent agreement concerning the single liability due under the account, and the absence of an independent agreement concerning any single liability in an open-account claim, is the critical distinction that determines which limitations period applies to each claim. Because there is no independent agreement in an open-account claim, the plaintiff must prove his or her right to collect on each of the underlying transactions that comprise the account. An open-account claim is the equivalent of a suit for the breach of the legal obligations that result from the parties' discrete transactions that comprise the account. Accordingly, where the underlying transactions pertain to an agreement to pass title of goods from the seller to the buyer for a price, as in this case, under the language of the UCC the four-year limitations period of MCL 440.2725 must be applied.

Justice VIVIANO took no part in the decision of this case.

©2013 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED JULY 30, 2013

S T A T E   O F   M I C H I G A N

SUPREME COURT

FISHER SAND AND GRAVEL
COMPANY,

        Plaintiff-Appellant,

v                                                    No. 143374

NEAL A SWEEBE, INC.,

        Defendant-Appellee.

---

BEFORE THE ENTIRE BENCH (except VIVIANO, J.)

ZAHRA, J.

At issue in this case is whether the four-year period of limitations in § 2725 of article 2 of Michigan's Uniform Commercial Code (UCC),[1] MCL 440.2725, is applicable to actions on either an open account or an account stated when the underlying debt stemmed from the sale of goods. Because actions on an account stated and actions on an open account are distinct and independent from the underlying transactions giving rise to

---

[1] MCL 440.1101 *et seq.*

the antecedent debt, neither action is governed by the four-year limitations period provided in § 2725 of the UCC. Rather, both actions are governed by the six-year period of limitations provided in MCL 600.5807(8). Accordingly, we reverse the contrary judgment of the Court of Appeals, which barred plaintiff's open account and account stated actions as untimely, and remand the case to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS

Plaintiff provided concrete supplies to defendant commencing in October 1991. Plaintiff timely and regularly invoiced defendant for these supplies. Defendant made sporadic payments to plaintiff in random amounts. Plaintiff maintained an account that recorded the supplies sold to defendant and the payments defendant submitted to plaintiff on that account. Through the course of the litigants' business relationship, defendant never paid its account in full.[2] Commencing in 2003, defendant acquired from plaintiff less product than it had acquired in prior years. Specifically, defendant made only 4 purchases from plaintiff in 2003 and 10 purchases from plaintiff in 2004. On May 9, 2005, defendant made what turned out to be its final purchase from plaintiff. On that

---

[2] Defendant takes issue with the amount claimed due by plaintiff. Defendant maintains plaintiff owed defendant outstanding sums as a result of work done on a nuclear plant in Midland, a project that was abandoned by Consumers Power Company in 1984. Thus, defendant claims that it was entitled to offset the entire amount that plaintiff claimed it was owed "if such old events were to be litigated." Plaintiff responds that the alleged open account on which its claim is predicated began in October 1991, more than 6 years after the nuclear plant project was abandoned. Thus, plaintiff claims, any counterclaim for setoff was barred at the time plaintiff's claim accrued.

2

date, plaintiff delivered a small amount of supplies to defendant, for which defendant was invoiced $152.98. Defendant paid the invoiced amount on May 13, 2005, by check. Defendant did not designate on its check that the tendered amount was to satisfy the invoice of May 9, 2005. Plaintiff claims it credited the payment against the open account balance. That was the last payment defendant made to plaintiff.

More than four years later plaintiff sued defendant, claiming that defendant owed plaintiff $92,968.57, including $3,718.32 in finance charges.[3] Plaintiff's claims included breach of contract, unjust enrichment, and account stated.[4] Plaintiff filed an amended complaint on October 29, 2009, adding a claim for amount owed on an open account. Defendant moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that plaintiff's claims were barred by the four-year period of limitations provided in § 2725 of the UCC. Plaintiff countered that defendant's obligation to pay on the open account was independent of any sale of goods and that its claim was therefore governed by the six-year period of limitations provided in MCL 600.5807(8). Whether defendant's May 13, 2005, payment was a payment on the open account or a payment for a distinct transaction was also disputed because defendant's $152.98 payment matched an invoice for the same amount dated May 9, 2005. The trial court held that plaintiff's action was governed by

_____

[3] The record is not entirely clear regarding the amount that plaintiff claims it is owed. Contrary to the figures used in the complaint and the amended complaint, in plaintiff's brief on appeal in this Court it claims it is owed $91,820.35 for materials provided over the course of the business relationship and $1,362.40 for interest on the account and late payment charges.

[4] In support of its account stated claim, plaintiff attached as exhibits to its complaint a summary of the account and an "AFFIDAVIT OF ACCOUNT STATED," the combination of which verified the alleged amount due pursuant to MCL 600.2145.

the four-year period of limitations provided in § 2725 because the parties' open account related to the sale of goods. Therefore, the trial court concluded, plaintiff's claims based on open account and account stated were not timely because the action was commenced more than four years after the claims accrued.[5]  A divided panel of the Court of Appeals affirmed in a published opinion, holding that the UCC's four-year limitations period was applicable to actions on both an open account and an account stated.[6]

---

[5] Because the trial court granted summary disposition in favor of defendant solely on the basis of its determination that the UCC's four-year limitations period applied, the court did not decide whether the parties had assented to a sum stated, either expressly or by implication because of defendant's inaction, thus converting the open account claim to an account stated claim.  Nor did the trial court find that defendant's May 9, 2005, payment of $152.98 revived plaintiff's cause of action.

[6] *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 293 Mich App 66; 810 NW2d 277 (2011).  The Court of Appeals described the statutory context of the dispute:

> The Revised Judicature Act provides a limitations period of six years "for . . . actions to recover damages . . . due for breach of contract."  MCL 600.5807(8).  All sales of goods are governed by Article 2 of the UCC, MCL 440.2102.  Section 2725 of the UCC, MCL 440.2725, provides that "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." . . .
>
> . . . "In actions brought to recover the balance due upon a mutual and open account current, the claim accrues at the time of the last item proved in the account."  MCL 600.5831.  Plaintiff contends that its claim accrued on May 13, 2005, the last date on which defendant made a payment.  Assuming, without deciding, that defendant's May 13, 2005, payment may be considered a payment toward the parties' open account, plaintiff's action was filed in August 2009, more than four years after the May 2005 payment. Thus, if plaintiff's action is governed by the four-year limitations period in the UCC, it is untimely.  [*Id*. at 70-71 (citation omitted).]

4

The Court of Appeals noted that it was unable to find anything in Michigan's jurisprudence directly addressing whether the four-year period of limitations in the UCC is applicable to an open account relating to the sale of goods.[7] Plaintiff argued that the UCC did not apply to its claim because "payment on an open account triggers a new obligation, separate and distinct from an underlying agreement."[8] The Court of Appeals dismissed plaintiff's contentions because the cases supporting plaintiff's argument did not involve the sale of goods subject to the UCC.[9] The Court of Appeals consulted the official comments to the UCC,[10] which provide that the purpose of article 2 is to take "'sales contracts out of the general laws limiting the time for commencing contractual actions . . . .'"[11] Though it acknowledged that the official comments do not have the force of law, the Court of Appeals noted that applying the UCC's four-year period of limitations to actions on open account would accomplish the goal identified in the

---

[7] The Court of Appeals referred only to plaintiff's open account action. It is clear from the context of the Court of Appeals' decision that the Court's analysis applied to plaintiff's open account action *and* its account stated action.

[8] *Id.* at 72, citing *Collateral Liquidation, Inc v Palm*, 296 Mich 702, 704; 296 NW 846 (1941), *Miner v Lorman*, 56 Mich 212, 216; 22 NW 265 (1885), and *Bonga v Bloomer*, 14 Mich App 315; 165 NW2d 487 (1968).

[9] *Fisher Sand & Gravel*, 293 Mich App at 72.

[10] The official comments are prepared by the National Conference of Commissioners on Uniform State Laws and the American Law Institute. Thomson West, Uniform Commercial Code: Official Text and Comments (2012-2013 ed), Preface, p iii.

[11] *Fisher Sand & Gravel*, 293 Mich App at 73 (citation omitted).

comments of promoting "uniformity and consistency" among the jurisdictions.[12]  The Court of Appeals also noted that "[o]ther jurisdictions that have addressed this question have favored applying the UCC limitations period to an action based on an open account related to the sale of goods."[13]

Judge O'CONNELL dissented, asserting that "[p]ayment on an open account triggers a new obligation, separate and distinct from an underlying agreement," and therefore, the new obligation is governed by the six-year period of limitations in MCL 600.5807(8).[14]  Thus, Judge O'CONNELL would have reversed the judgment of the trial court.[15]

This Court granted leave to appeal to determine whether an action on an open account relating to the sale of goods is subject to the four-year period of limitations in § 2725 of the UCC or the general six-year period of limitations applicable to contract

---

[12] *Id*.

[13] *Id*.  Specifically, the Court of Appeals relied on a case from the Oregon Court of Appeals, *Moorman Mfg Co of California, Inc v Hall*, 113 Or App 30, 33; 830 P2d 606 (1992), which held that

> [a]lthough an account stated is based on a separate agreement between the parties, it relates to and cannot be divorced from the underlying sales transaction.  The UCC drafters intended that one limitation apply to all transactions involving the sale of goods, regardless of the theory of liability asserted.  [Citation omitted.]

[14] *Fisher Sand & Gravel*, 293 Mich App at 76 (O'CONNELL, J., dissenting).

[15] *Id*. at 78.

6

actions in MCL 600.5807(8).[16]

## II. STANDARD OF REVIEW

MCR 2.116(C)(7) allows a party to file a motion for summary disposition on the ground that a claim is barred because of the expiration of the applicable period of limitations. A movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. Moreover, the contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant.[17] Appellate review of a trial court's summary disposition ruling pursuant to MCR 2.116(C)(7) is de novo.[18] Questions of statutory interpretation are also reviewed de novo.[19]

## III. ANALYSIS

### A. COLLECTION ACTIONS GENERALLY

Michigan has recognized a number of collection actions. These actions include open account claims, mutual and open account current claims, and account stated claims.

---

[16] *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 491 Mich 914 (2012). Absent from our grant order is any reference to account stated actions. Thus it appears that at the time leave was granted we failed to appreciate the distinction between open accounts and accounts stated.

[17] *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994).

[18] *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998).

[19] *In re MCI Telecom Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999).

7

The purpose of these causes of action is to recover sums due that arose out of a course of dealing between the parties.

Historically the common law has distinguished an open account from a mutual and open account current. An "open account" is traditionally defined as "'1. [a]n unpaid or unsettled account. 2. [a]n account that is left open for ongoing debit and credit entries and that has a fluctuating balance until either party finds it convenient to settle and close, at which time there is a single liability.'"[20] This Court has characterized an open account as "'one which consists of a series of transactions and is continuous or current, and not closed or stated.'"[21] By comparison, a "mutual account" is traditionally defined as "[a]n account showing mutual transactions between parties, as by showing debits and credits on both sides of the account."[22] Consistent with this traditional definition, this Court has characterized a mutual and open account current as an account that is both mutual and open, resulting from "a course of dealing where each party furnishes credit to the other on the reliance that upon settlement the accounts will be allowed, so that one will reduce the balance due on the other."[23]

An account stated action is based on "'an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts

---

[20] *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi*, 483 Mich 345, 355-356; 771 NW2d 411 (2009), quoting Black's Law Dictionary (7th ed).

[21] *A Krolik & Co v Ossowski*, 213 Mich 1, 7; 180 NW 499 (1920) (citation omitted).

[22] Black's Law Dictionary (7th ed), p 18.

[23] *In re Hiscock Estate*, 79 Mich 536, 538; 44 NW 947 (1890).

representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance.'"[24] Importantly, an open account may be converted into an account stated:[25]

> The conversion of an open account into an account stated, is an operation by which the parties *assent* to a sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts. That it has taken place, may appear by evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them. When accomplished, it does not necessarily exclude all inquiry into the rectitude of the account. The parties may still impeach it for fraud or mistake.[26]

In the past these claims have been conflated or treated inconsistently by the Legislature and Michigan courts.[27] For example, the burden-shifting statute (now MCL 600.2145) has expressly included open account claims and claims on an account stated since as far back as the 1870s, but has never expressly included claims on mutual and open accounts.[28] Furthermore, the accrual of mutual and open account claims is

---

[24] *Leonard Refineries, Inc v Gregory*, 295 Mich 432, 437; 295 NW 215 (1940), quoting *Thomasma v Carpenter*, 175 Mich 428, 434; 141 NW 559 (1913).

[25] While an open account may be converted into an action on an account stated, we are aware of no authority that requires an open account as a prerequisite to an action on an account stated.

[26] *White v Campbell*, 25 Mich 463, 468 (1872) (in which the plaintiff brought action on an account stated).

[27] To the extent the Legislature desires to clarify this area of the law, it might consider revisiting the statutory framework that corresponds with these collection actions.

[28] See How Stat 7525; 1871 CL 5954.

9

governed by MCL 600.5831, while no specific statutory provision exists for the accrual of either open account claims or claims on an account stated.[29]

At times, this Court has not been a model of clarity when addressing collection actions. As previously discussed, this Court has characterized a mutual and open account current as an account that is both mutual and open, resulting from "a course of dealing where each party furnishes credit to the other on the reliance that upon settlement the accounts will be allowed, so that one will reduce the balance due on the other."[30] But in *Fuerbringer v Herman* the Court held that payment of money on an account is sufficient to render the account mutual.[31] Allowing payments toward an account to be sufficient to render the account mutual is against the general authority. As observed in Williston on Contracts:

> [I]t is generally held essential, in order to constitute such an account as shall fall within the principle in question, that there shall be mutual open, current dealings and claims subject to a future final balance.
>
> A payment, therefore, given and received as partial discharge of an account for goods or services does not make the account mutual; it merely diminishes the amount due on a one-sided account.[32]

The *Fuerbringer* Court dismissed this Court's earlier decision in *In re Hiscock Estate* without analysis,[33] leaving practitioners and lawmakers to wonder whether there is

---

[29] See MCL 600.5831 ("In actions brought to recover the balance due upon a mutual and open account current, the claim accrues at the time of the last item proved in the account.").

[30] *In re Hiscock Estate*, 79 Mich at 538.

[31] *Fuerbringer v Herman*, 225 Mich 76, 79; 195 NW 693 (1923).

[32] 31 Williston, Contracts (4th ed), § 79.26, pp 389-390 (citations omitted).

10

a difference in Michigan between an open account and an open and mutual account current. As recently as 2009, this Court considered whether an action to collect past due attorney fees was an open and mutual account current. While the Court concluded that the action was not an open and mutual account current, this holding was not based on the lack of mutual exchange of credit between the law firm and its client but instead on the fact that the underlying service contract expressly provided the terms of payment.[34]

Notwithstanding these inconsistencies, the common thread in actions on accounts is that they arise "where the parties have conducted a series of transactions for which a balance remains to be paid."[35] We now turn to the instant matter, which involves an open account claim and an account stated claim.

## B. ACTIONS ON AN ACCOUNT STATED

Of the three claims discussed in this opinion, the account stated claim is most clearly defined under Michigan law. An account stated "is a contract based on assent to an agreed balance, and it is an evidentiary admission by the parties of the facts asserted in the computation and of the promise by the debtor to pay the amount due."[36] This Court has characterized an account stated as "'but an expression to convey the idea of a contract having an account for its consideration, and is no more an account than is a promissory

---

[33] *Fuerbringer*, 225 Mich at 79.

[34] *Seyburn*, 483 Mich at 348.

[35] 1 Am Jur 2d, Accounts and Accounting, § 8, p 628.

[36] 13 Corbin, Contracts (rev ed), § 72.4(2), p 478, citing Restatement Contracts, 2d, § 282, comment c.

note or contract, having a like consideration for its support.'"[37] An account stated, like all contracts, requires mutual assent. Specifically, "[a]n account stated requires the manifestation of assent by both parties to the correctness of the statement of the account between them."[38]

In his treatise on contract law, Professor Arthur Corbin summarized the nature of an action on an account stated:

> If a claimant renders an account and it is assented to as correct by the other party with an express or implied promise to pay, an action may be maintained on the promise. *The account stated is a new, independent cause of action superseding and merging the antecedent causes of action represented by the particular items included in the computation.*[39]

In *White v Campbell*, this Court likened the obligation to pay the antecedent debt to that commonly associated with a promissory note:

> [T]he agreed statement serves in place of the original account, *as the foundation of an action. It becomes an original demand*, and amounts to an express promise to pay the actual sum stated. The creditor becomes entitled to recover the agreed balance, *in an action based on the fact of its acknowledgment by the debtor*, upon an adjustment of their respective claims. The effect of the operation is said to be much the same as though the debtor had given his note for the balance.[40]

The parties to an account stated need not expressly assent to the sum due, as there are instances when assent may be inferred from a party's *inaction*:

---

[37] *A Krolik & Co*, 213 Mich at 8, quoting *Auzerais v Naglee*, 74 Cal 60; 15 P 371 (1887).

[38] 13 Corbin, Contracts (rev ed), § 72.4(2), p 481.

[39] *Id*. at § 72.4, pp 466-467 (emphasis added).

[40] *White*, 25 Mich at 468 (citations omitted) (emphasis altered).

12

>   [A]s against a party receiving an account, and not objecting to it within a reasonable time, its correctness may be considered as admitted by him, and the balance as the debt; or, in other words, that the party rendering the account may, under such circumstances, treat it as an account stated . . . . If the party to whom the account is rendered, object[s] within a reasonable time, there is no room for inferring an admission of its correctness.[41]

In other words, the debtor's new promise to pay is a matter of express or implied contract, depending on the conduct of the parties. When the parties expressly agree to the sum due, the stated account forms an express contract. By contrast, when one party's assent is inferred from inaction, the stated account operates to form an implied contract.[42] No matter the method of assent, the debtor in an account stated action has received goods or services without having paid for them, and an action exists when the price of those goods or services is greater than the sum paid.[43]

---

[41] *White*, 25 Mich at 469, citing *Lockwood v Thorne*, 11 NY 170 (1854), and *Lockwood v Thorne*, 18 NY 285 (1858).

[42] An account stated is an implied-in-fact contract when one party assents by implication because the requisite mutual assent is inferred from the conduct of the parties. See *Cascaden v Magryta*, 247 Mich 267, 270; 225 NW 511 (1929).

[43] 13 Corbin, Contracts (rev ed), § 72.1(3), p 457. Historically, a promise resulting from an account stated

>   was enforced because it was a promise to pay a pre-existing debt called by the courts "past" consideration. In reality, the promise is enforced as other subsequent promises, such as a subsequent promise after the receipt of a material benefit or the promise to pay a debt that is barred by the statute of limitations. In each of these factual situations, the retention of a benefit previously received, the goods or services previously rendered, is unjust or the retention of the prior transfer of goods or services cannot be justified on the basis of a legal principle or a legal relationship. This is the fundamental reason for the enforcement of the promise. [*Id*. (citations omitted).]

The Court of Appeals held that because the transactions giving rise to the debt on account related to the sale of goods, the four-year period of limitations set forth in § 2725 of the UCC applies to plaintiff's account stated claim. The Court of Appeals was persuaded by a case from the Oregon Court of Appeals that characterized account stated claims by the nature of the underlying obligations comprising the account. Specifically, the Michigan Court of Appeals relied on *Moorman Mfg Co of California, Inc v Hall*, which stated that "'[a]lthough an account stated is based on a separate agreement between the parties, it relates to and cannot be divorced from the underlying sales transaction.'"[44] But the *Moorman Mfg* case runs contrary to this Court's prior pronouncements regarding the materiality of the underlying transactions in an account stated action. As early as 1857 this Court observed:

> It is not necessary, in support of an account stated, to show the nature of the original transaction, or indebtedness, or to give the items constituting the account. . . . Neither does the nature of the original transaction, out of which the acknowledgment of indebtedness grew, appear to be material.[45]

It follows, then, that an action on an account stated is indeed an independent cause of action, separate and distinct from the underlying transactions giving rise to the antecedent debt. Therefore, it is immaterial whether the underlying transactions involved the sale of goods.

The Court of Appeals erroneously relied on the official comment to § 2725 of the UCC to arrive at its result. The official comments to the UCC do not have the force of

---

[44] *Fisher Sand & Gravel*, 293 Mich App at 74, quoting *Moorman Mfg*, 113 Or App at 33.

[45] *Stevens v Tuller*, 4 Mich 387, 388-389 (1857).

14

law.[46]  When ascertaining the Legislature's intent, a reviewing court should focus first on the plain language of the statute in question,[47] and when the language of the statute is unambiguous, it must be enforced as written.[48]  Examining the plain language of § 2725, Professor Corbin concluded that, because an action on an account stated is not an action "for breach of any contract for sale,"[49] the four-year limitations period does not apply to actions on an account stated:

> Recent authorities hold that an action on an account stated arising out of a transaction in goods is subject to the four-year statute of limitations applicable to the underlying goods transaction.  Despite the laudable goal of minimizing hardship and confusion for buyers and sellers "doing business on a nationwide scale," the four-year limitation period of [§ 2725] is inapplicable to an action on an account stated.  First, [§ 2725] states that an action "for breach of any contract for *sale* must be commenced within four years." . . .  An action on an account stated is not an action for the breach of a contract for sale.  Rather, it is an action to enforce a subsequent promise to pay an account.  Indeed, the action on such a promise is analogous to an action on a promise to pay embodied in a note or letter of credit.  An action on either of these formal promises to pay is subject to the limitations period applicable to the promise to pay, not the underlying transaction, which might be a sale of goods.[50]

---

[46] *Shurlow v Bonthuis*, 456 Mich 730, 735 n 7; 576 NW2d 159 (1998), citing White & Summers, Uniform Commercial Code (3d ed), § 4, p 12; see also *Prime Fin Servs LLC v Vinton*, 279 Mich App 245, 260 n 6; 761 NW2d 694 (2008).

[47] *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011), citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[48] *Sun Valley*, 460 Mich at 236.

[49] MCL 440.2725.

[50] 13 Corbin, Contracts (rev ed), § 72.4(2), pp 472-473 (citations omitted).

15

Because the language of § 2725 plainly states that it only applies to actions on the sale of goods,[51] and an action on an account stated is an action on a promise to pay a certain amount that has nothing to do with any underlying sales transactions, the Court of Appeals erred by relying on the official comment to § 2725 of the UCC. Further, even if the underlying debt stemmed from the sale of goods, the Court of Appeals erred by concluding that the four-year limitations period applies because the nature of the underlying transactions is immaterial.

Therefore, it being established that an account stated is "a contract based on assent to an agreed balance,"[52] an action on an account stated is subject to the six-year limitations period governing general contract actions provided in MCL 600.5807(8).[53]

---

[51] See also MCL 440.2102 (stating that article 2 of the UCC applies to transactions in goods).

[52] 13 Corbin, Contracts (rev ed), § 72.4(2), p 478.

[53] A cause of action on an account stated accrues upon an adjustment of the parties' respective claims against one another. *White*, 25 Mich at 468 ("The creditor becomes entitled to recover the agreed balance, in an action based on the fact of its acknowledgement by the debtor, *upon an adjustment of their respective claims*[.]") (emphasis added). In other words, the accrual of an account stated claim "occurs when assent to the statement of account is either expressed or implied . . . ." 13 Corbin, Contracts (rev ed), § 72.4(2), p 473. Further, it has also long been established in Michigan law that payment on an account stated renews the running of the period of limitations. *Miner*, 56 Mich at 216. In *Miner*, Chief Justice COOLEY opined:

> [Partial payment of a demand] operates as an acknowledgment of the continued existence of the demand, and as a waiver of any right to take advantage, by plea of the statute of limitations, of any such lapse of time as may have occurred previous to the payment being made. The payment is not a contract; it is not in itself even a promise; but it furnishes ground for implying a promise in renewal from its date, of any right of action which before may have existed. [*Id.*]

16

Applying these legal principles to the present case, plaintiff submitted with its complaint a summary of the account and an "AFFIDAVIT OF ACCOUNT STATED." Defendant did not expressly assent to the balance due as reflected in this affidavit. Nonetheless, plaintiff claims its statement of the account stood unimpeached at the time the trial court dismissed plaintiff's claims.[54]   Having erroneously concluded that plaintiff's claim was time-barred, the trial court did not consider whether defendant had properly objected to plaintiff's statement of the account.  On remand, we direct the trial court to consider whether plaintiff presented evidence that defendant assented to plaintiff's statement of the account, either expressly or by implication.

## C.  ACTIONS ON AN OPEN ACCOUNT

Like account stated claims, actions on an open account have long been recognized in Michigan.[55]  Nonetheless, the caselaw defining this claim is far less developed than the caselaw addressing accounts stated.  This may be because a suit on an open account is,

---

[54] While defendant does not contest that it owes plaintiff, it does contend that it should be allowed to offset the amount owed plaintiff against money plaintiff owes defendant from prior dealings.  This contention is inconsequential to the issue before this Court and, therefore, we take no position on it.

[55] See *Locke v Farley*, 41 Mich 405, 406; 1 NW 955 (1879) ("The action was brought on an account for goods alleged to have been sold and delivered to Locke by the defendants in error as a partnership under the name of Farley, Hawey & Co."  A central issue to the case was whether the parties' affidavits met the requirements of 1871 CL 5954—one of many predecessors of the modern-day burden-shifting statute, MCL 600.2145.  The former statute applied to accounts stated and open accounts alike, as does the current statute); *Snyder v Patton & Gibson Co*, 143 Mich 350, 351; 106 NW 1106 (1906) ("The suit was brought to recover an unpaid balance upon an account for labor."); *Star Steel Supply Co v White*, 4 Mich App 178, 180; 144 NW2d 673 (1966) ("The plaintiff's suit is based on a statement of the open account with an affidavit of open account . . . .").

17

from a creditor's perspective, a less desirable claim than an action on an account stated. In an action on an account stated, the creditor must present proof of the debtor's express or implied assent to the balance due. Upon such proof, the underlying transactions become irrelevant. In an action on an open account, however, there is no assent to a balance due. Thus, the creditor may be required to establish the validity of the entries in the account.[56] Additionally, open account claims were traditionally rooted in assumpsit.[57] "Assumpsit" is defined as "**1.** An express or implied promise, not under seal, by which one person undertakes to do some act or pay something to another <an assumpsit to pay a debt>. **2.** A common-law action for breach of such a promise or for breach of a contract <the creditor's assumpsit against the debtor>."[58] With the adoption of the General Court

---

[56] While a creditor may establish a prima facie case of indebtedness in an open account action by annexing both an affidavit of the amount due and a copy of the account to the complaint pursuant to MCL 600.2145, that action is not required to commence an open account action. A creditor may instead prove his or her account "in the ancient way" by offering testimony and other evidence demonstrating indebtedness. *McHugh v Butler*, 39 Mich 185, 186 (1878) ("Here the affidavit was made out of time, and when the plaintiff went to trial his situation was no better than it would have been if no affidavit had been made. He was required to prove his case in the ancient way."); see also *Snyder*, 143 Mich at 351-352.

[57] See, e.g., *Morrill v Bissell*, 99 Mich 409, 412; 58 NW 324 (1894) ("Plaintiff . . . commenced an action of *assumpsit* in the circuit court . . . upon an account for goods sold and delivered. The suit was by declaration upon the common counts."); *McHugh*, 39 Mich 185 (an assumpsit action in which the plaintiff "sued to recover on an open account and served with the declaration a copy of the account and of an affidavit made by him of the amount due"); *Gordon v Sibley*, 59 Mich 250, 251; 26 NW 485 (1886) ("[P]laintiff declared orally in assumpsit for goods, wares, and merchandise sold and delivered by the plaintiff to the defendant, at the defendant's request, during the year 1883, and claimed damages, $100."); *Grand Dress, Inc v Detroit Dress Co*, 248 Mich 447, 448; 227 NW 723 (1929) ("This suit was brought in assumpsit upon an open account. The declaration was on the common counts, accompanied by a bill of particulars.").

[58] Black's Law Dictionary (9th ed), p 142.

18

Rules in 1963, assumpsit as a form of action was abolished.[59]  But notwithstanding the abolition of assumpsit, the substantive remedies traditionally available under assumpsit were preserved:

> It is to be understood that the abolition of the forms of action *does not abolish the remedies thereunder*.  If a cause of action is stated in the complaint showing the pleader entitled to relief, the appropriate substantive remedy will remain, no matter if the action is labeled as to form or is merely designated as a civil action.[60]

Thus, there is no doubt that plaintiff can pursue a civil action on an open account.  Unclear from our jurisprudence, however, is whether an action on an open account, like an action on an account stated, is an independent cause of action, separate and distinct from the underlying transactions giving rise to the antecedent debt, or a claim that is dependent on the underlying transactions.

This Court's opinion in *Goodsole v Jeffery* is insightful in distinguishing open account claims from claims based on an antecedent debt that arises from an express contract defining the rights and liabilities of the parties.[61]  In *Goodsole*, the litigants agreed by oral

---

[59] The Michigan Court Rules state that "[t]here is one form of action known as a 'civil action.'"  MCR 2.101(A).  *Former* GCR 1963, 110.3 abolished the technical forms of pleading:

> All common counts, general issues, demurrers, pleas, fictions and technical forms of action or pleading, are abolished.  The form and sufficiency of all motions and pleadings shall be determined by these rules, construed and enforced to secure a just, speedy, and inexpensive determination of all controversies on their merits.  [Reprinted in 1 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), p 176.]

[60] Committee Comment, reprinted in 1 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), p 179 (emphasis added).

[61] *Goodsole v Jeffery*, 202 Mich 201; 168 NW2d 461 (1918).

contract that the plaintiff would provide the defendant a piano and the defendant would pay the plaintiff rent of $2.50 per month on the eighth day of each month commencing August 8, 1906. It appears the contract was for an indefinite term. The plaintiff kept a book of the charges and payments. The last charge for rent came on May 8, 1911, and the last payment made to the plaintiff was February 2, 1910. On August 30, 1916, the plaintiff brought suit to collect all unpaid rental charges through May 8, 1911. The plaintiff maintained that since the debt was on an open and mutual account, the entire amount was due and owing. The defendant argued that only unpaid rental charges that had accrued within 6 years of the complaint were collectable. This Court held that the plaintiff failed to establish the existence of an open and mutual account current:

> I know of no decision of this court, and think there is none to be found in any jurisdiction, holding that where the dealings of the parties relate entirely to and are governed by a special contract for the payment of money, at agreed upon periods, an open mutual account is established by performance of the contract obligation, whether a book account of it is kept or not. . . . [T]he defendant having pleaded the statute of limitations, judgment should have been directed in his favor . . . .[62]

More than 20 years after *Goodsole*, this Court again considered the distinction between a claim on an account and a claim based on the underlying transactions giving rise to the debt that arises from an express contract defining the rights and liabilities of the parties. In *In re Dei's Estate*, the plaintiff, an attorney, performed legal services for Christina Dei from 1925 to 1933, during which time Dei only made two payments on the

---

[62] *Id.* at 203.

account.[63]   Dei died in 1935.  After the plaintiff was made aware of Dei's death, he

brought a claim against her estate for the unpaid balance on the account.  The estate

defended against the claim by arguing that any legal services provided more than six

years before Dei's death were barred by the statute of limitations.  The Court framed the

issue as follows:

> As to whether the whole or any part of plaintiff's claim is barred by
> the statute of limitations, we must first determine whether or not the
> account as presented was a mutual and open account current.  If so, the
> [entire amount due on the account is collectable.]  If not, only those items
> charged against decedent in her lifetime can be allowed that accrued within
> six years prior to her death.[64]

In concluding that the relationship between the plaintiff and Dei created an open

and mutual account, the Court distinguished its holding in *Goodsole*.  Unlike *Goodsole*,

there was no agreement that defined the terms of payment for the services rendered.

Thus, because the particulars of the decedent's credit relationship with her lawyer were

not governed by the terms of the underlying services agreement, the plaintiff had a valid

mutual and open account current claim.[65]

This Court recently reexamined *In re Dei's Estate* in *Seyburn*, which also involved

a claim for unpaid legal fees.[66]  In *Seyburn*, this Court examined whether a claim for

---

[63] *In re Dei's Estate*, 293 Mich 651, 652-654; 292 NW 513 (1940).  Although *In re Dei's Estate* involved an action on a mutual and open account current, we see no reason why the rationale employed ought not apply to actions on an open account.

[64] *Id*. at 655-656.

[65] *Id*. at 656-658.

[66] *Seyburn*, 483 Mich 345.

21

unpaid attorney fees was an action on an open and mutual account current. The Court looked to the retainer agreement and concluded that the parties' credit relationship was expressly defined by the explicit terms of their agreement for services:

> In the present case, it is undisputed that plaintiff and defendant entered into a signed contract containing specific terms. The contract stated that plaintiff agreed to provide legal services to defendant and, in turn, defendant would make payments of money to plaintiff. Specifically, the contract provided for plaintiff to send a billing statement by the 20th of each month, using hourly billing at an established rate, and also required defendant to pay within 10 days of the date of the statement. In addition, the contract defined the liabilities of both parties.[67]

Thus, because the terms of the parties' credit relationship were provided for in their contract for services, a mutual and open account current claim could not be established on the basis of the parties' mere failure to perform pursuant to their contractual obligations.

We hold that when an integral component of a transaction for goods or services is an express agreement for the periodic payment of money, an open account claim cannot be established by the mere performance or nonperformance of the contract obligation.[68] Under those circumstances, the creditor's remedy is to timely pursue a breach of contract action when the debtor fails to live up to the terms of the underlying agreement. But when the credit relationship is not defined as an integral part of the transaction for goods or services, and instead arises from a course of dealing between the parties, an open

---

[67] *Id.* at 357.

[68] See *Goodsole*, 202 Mich at 203; *In re Dei's Estate*, 293 Mich at 656-658; *Seyburn*, 483 Mich at 357.

account claim may arise by implied contract.[69]  Applying this holding to the present case, it is unclear whether an integral component of the parties' transactions was an express agreement for the periodic payment of money.  Thus, we direct the trial court to determine as much on remand.

There are several factors that weigh in favor of our holding today.  Significantly, for more than 150 years, Michigan courts have recognized actions on an open account. Likewise, for the same period of time our Legislature has recognized this claim, along with a claim for an account stated.  These suits are premised on the debt due on the account and rarely discuss the underlying transactions, except to the extent that the transactions provide a defense to the debt.[70]

Recognition of an action on an open account as an independent claim that arises out of the course of dealing between a creditor and debtor also promotes commerce without encouraging creditors to file lawsuits to preserve their right to collect on debts.

---

[69] Justice MARKMAN, similarly to the out-of-state authority on which he relies, recognizes that article 2 of the UCC governs individual sales on credit but declines to acknowledge a distinction between individual sales on credit and serial sales on credit that lack an express agreement for the periodic payment of money that are melded into an account. Any lack of statutory analysis in this opinion stems from the absence of any express mention of actions on accounts in article 2 of the UCC.  As previously discussed, this Court's treatment of these collection actions has been anything but a model of clarity and consistency, and the disagreement between Justice MARKMAN and the majority of this Court is not an unreasonable one.

[70] *Grand Dress*, 248 Mich at 448-449 (in which the defendant, through its counteraffidavit, not only admitted indebtedness regarding some items but also disputed some ledger entries on the grounds that the plaintiff had allegedly increased the agreed-to price for a number of items by $0.25); *Star Steel Supply*, 4 Mich App at 181-183 (in which the defendant disputed a number of charges on an open account in response to the plaintiff's "affidavit of open account").

Assume for example that a merchant sold goods and services on account whereby goods and services would be regularly delivered to a purchaser who in turn made sporadic payments in varying amounts as the relationship developed. As the parties' relationship nears its fourth year, the merchant would have to insist on settlement of the account or risk the possibility that all or part of the balance due on account could be declared uncollectable after the four-year limitations period on the sale of goods expires. Even if this merchant dealt exclusively in the sale of services, he would face the same dilemma in year six.

We must next determine what limitations period applies to open account claims. For all the reasons stated previously in our analysis of the limitations period for accounts stated, we reject the notion that § 2725 of the UCC applies when the underlying account arises from the sale of goods. The language of § 2725 plainly states that it only applies to actions for breach of contract for the sale of goods.[71] An open account claim is not a breach of contract action for the sale of goods; it is an action to collect on the single liability stemming from the parties' credit relationship regardless of the underlying transactions comprising the account.[72] Thus, the Court of Appeals erred by holding that

---

[71] See also MCL 440.2102 (stating that article 2 of the UCC applies to transactions in goods).

[72] See the text accompanying notes 49-51 of this opinion. While Professor Corbin's analysis expressly relates to an account stated, it is informative and persuasive with regard to an open account claim. See 13 Corbin, Contracts (rev ed), § 72.4(2), pp 472-473. While § 2725 applies to actions "for breach of any contract for *sale*," an open account claim is no more an action for a breach of a contract for sale than is an account stated claim. (Emphasis added.) Rather, an open account claim is an action to recover the single liability stemming from the parties' credit relationship. Like an account stated claim, an open account claim is analogous to "an action on a promise to pay embodied in

---

the four-year period of limitations provided in § 2725 of the UCC applies to actions on an open account.

We further conclude that an open account, like an account stated, is premised on an express or implied contract. In some instances, the credit relationship between the creditor and debtor may be defined by an express contract.[73] Yet, in other instances, the credit relationship will arise from the parties' course of dealing.[74] Having established that an open account claim is an action for breach of an express or implied contract, we conclude that open account claims are subject to the six-year period of limitations governing general contract actions provided in MCL 600.5807(8).

An open account claim generally accrues on the date of each item proved in the account.[75] Furthermore, those items "are severally barred when as to them the statute has run."[76] Partial payment on an account, however, may toll or even remove the statute of

---

a note or letter of credit." *Id*. at p 473. As Professor Corbin noted, an action on a note or letter of credit "is subject to the limitations period applicable to the promise to pay, not the underlying transaction, which might be a sale of goods." *Id*.

[73] See the text accompanying note 68 of this opinion. Of course, when the credit relationship is provided for by the terms of the parties' contract, those terms shall govern. A credit card relationship is an example of this type of contract.

[74] See *Star Steele Supply*, 4 Mich App at 180 (in which the plaintiff entered into a course of dealings with the defendant, selling goods, wares, merchandise, and services on open account); *In re Dei's Estate*, 293 Mich at 652-654 (in which the plaintiff provided a variety of services to the decedent over the course of years, and the decedent made sporadic payments toward the account over the same).

[75] 1 Am Jur 2d, Accounts and Accounting, § 22, p 644.

[76] *Id*.

limitations under certain circumstances.[77]   As recently as 2000, this Court unanimously

held that

> a partial payment [on a debt] restarts the running of the limitation period unless it is accompanied by a declaration or circumstance that rebuts the implication that the debtor by partial payment admits the full obligation.

> This rule is at least as old as *Miner v Lorman*, 56 Mich 212, 216; 22 NW 265 (1885).  Though other aspects of *Miner* led this Court to conclude that the plaintiff could not prevail in his suit, Justice COOLEY's opinion for a unanimous Court included this explanation:

> "The statute does not prescribe what effect part payment of a demand shall have, but it is familiar law that it operates as an acknowledgment of the continued existence of the demand, and as a waiver of any right to take advantage, by plea of the statute of limitations, of any such lapse of time as may have occurred previous to the payment being made.  The payment is not a contract; it is not in itself even a promise; but it furnishes ground for implying a promise in renewal from its date, of any right of action which before may have existed."

> The Supreme Court frequently has restated this principle.   In *Hiscock v Hiscock*, 257 Mich 16, 25; 240 NW 50; 78 ALR 953 (1932), a dispute concerning payments on a mortgage, the Court said:

> "A voluntary and unqualified payment subsequent to the bar [of the statute of limitations] is the best evidence that the debtor does not claim his legal rights, but, on the contrary, intends to waive them and to perform his moral obligation to pay the whole of the just debt."

> With little discussion, the principle was applied in *Wagner v Kincaid*, 291 Mich 262, 266; 289 NW 154 (1939).  To the same end, we explained in *Collateral Liquidation, Inc v Palm*, 296 Mich 702, 704; 296 NW 846 (1941), that "[t]he effect of the payment under the statute is equivalent to a new promise."   And in *Beaupre v Holzbaugh*, 327 Mich 101, 107-108; 41 NW2d 338; 27 ALR2d 532 (1950), this Court said, "In the absence of any showing that payment was not intended by the parties to imply a new promise to pay, the statute was tolled by the payment and the note was not outlawed when suit was begun."

---

[77] *Id*. at § 24, p 646.

26

In recent years, the Court of Appeals has likewise applied this rule. *Alpena Friend of the Court ex rel Paul v Durecki*, [195 Mich App 635; 491 NW2d 864 (1992)]; *Federal Deposit Ins Corp v Garbutt*, 142 Mich App 462, 468; 370 NW2d 387 (1985); *Bonga* [*v Bloomer*, 14 Mich App 315, 319; 165 NW2d 487 (1968)].[78]

Indeed, consistently with the quoted passage, this Court concluded in *Yeiter* that the partial payments made less than six years before commencement of the action operated to renew the defendant's promise to pay the entire amount owed, thereby restarting the six-year limitations period provided in MCL 600.5807(8).[79]

In the instant case, plaintiff's May 9, 2005, delivery of concrete supplies was accompanied by an invoice in the amount of $152.98. On May 13, 2005, defendant rendered payment in the amount of the invoice, but did not pay the alleged balance due. Relying on this Court's decision in *Seyburn*,[80] the trial court held that defendant's May 13, 2005, payment to plaintiff "was a disconnected event which would give rise to a separate obligation on the part of the [d]efendant . . . ." *Seyburn* has no bearing on the accrual of plaintiff's open account claim.[81] Indeed, the instant case is seemingly devoid of an event, such as the termination of the relationship in *Seyburn*, that would suggest

---

[78] *Yeiter v Knights of St Casimir Aid Society*, 461 Mich 493, 497-499, 607 NW2d 68 (2000) (alteration in original).

[79] *Id*. at 499-501.

[80] *Seyburn*, 483 Mich 345.

[81] This Court concluded in *Seyburn* that the parties' relationship was governed by the explicit terms of their contract and that the plaintiff's claim accrued upon the termination of the attorney-client relationship. *Seyburn*, 483 Mich at 348.

that defendant's May 13, 2005, payment was disconnected from the other underlying transactions giving rise to plaintiff's claim. Accordingly, the trial court's conclusion to that effect is questionable. Thus, we direct the trial court to revisit on remand its determination that the May 13, 2005, payment was disconnected from the other transactions in light of this opinion. If the trial court finds that the May 13, 2005, payment—or any other payment within the six-year period preceding commencement of this suit—operated to renew defendant's promise to pay its entire indebtedness to plaintiff, plaintiff's action will have been commenced within the six-year limitations period provided in MCL 600.5807(8).

## IV. CONCLUSION

Because both an action on an account stated and one on an open account are distinct from the underlying transactions giving rise to the antecedent debt, neither is governed by the four-year limitations period provided in § 2725 of the UCC. We conclude that both open account claims and actions on account stated are subject to the six-year period of limitations provided in MCL 600.5807(8). Thus, we reverse the contrary judgment of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

Brian K. Zahra
Robert P. Young, Jr.
Michael F. Cavanagh
Mary Beth Kelly
Bridget M. McCormack

28

STATE OF MICHIGAN

SUPREME COURT

FISHER SAND AND GRAVEL
COMPANY,

Plaintiff-Appellant,

v                                                                No. 143374

NEAL A SWEEBE, INC.,

Defendant-Appellee.

_____

MARKMAN, J. (*concurring in part and dissenting in part*).

At issue is whether either an "account stated" or an "amount owed on open account" claim is subject to the four-year limitations period of § 2-725 of the Uniform Commercial Code (UCC), MCL 440.2725, which applies to actions for breach of the legal obligations that result from the sale of goods.[1]  I agree with the majority that the UCC's four-year limitations period does not apply to an "account stated" claim because an "account stated" claim does not constitute an action for breach of the legal obligations that result from the sale of goods.  Such a claim is not based upon the buyer's failure to pay the seller for goods, but rather upon the buyer and seller having reached a subsequent and independent agreement that the buyer will pay the seller a specific dollar amount that

_____

[1] The UCC as drafted by the National Conference of Commissioners on Uniform State Laws and the American Law Institute identifies the statute of limitations in question as § 2-725, while the comparable Michigan statute is identified as § 2725.

reflects the aggregate amount owed for the goods. An "account stated" claim is an action to enforce the buyer's subsequent and independent promise to settle the account, analogous to an action on a buyer's promise to pay embodied in a promissory note, and is subject to the limitations period applicable to the promise to pay, i.e., the six-year limitations period governing general contract actions set forth in MCL 600.5807(8). However, unlike the majority, I believe that the UCC's four-year limitations period applies to an "amount owed on open account" claim when the balance owed on the open account arose from the sale of goods, as it did here, because such a claim constitutes an action for breach of the legal obligations that result from the sale of goods. An "amount owed on open account" claim is based on the buyer's failure to pay the seller for goods, not on the buyer and seller having reached any subsequent and independent agreement that the buyer will pay the seller a specific dollar amount that they believe reflects the aggregate amount owed for the goods. Accordingly, I respectfully dissent from the majority's analysis of plaintiff's "amount owed on open account" claim in which it concludes that the "amount owed on open account" claim is subject to the six-year limitations period governing general contract actions.

## I. PLAINTIFF'S CLAIMS

Plaintiff's amended complaint set forth four causes of action: (1) breach of contract, (2) amount owed on open account, (3) account stated, and (4) unjust enrichment. Plaintiff did not appeal the dismissal of its breach of contract and unjust enrichment claims. Thus, only the "account stated" and "amount owed on open account" claims are at issue here. Regarding the "account stated" claim, plaintiff alleges that it

2

submitted "statements of account" to defendant and that defendant either acknowledged the statements as correct, agreed to pay the balance shown on the statements, or never objected to the statements. Regarding the "amount owed on open account" claim, plaintiff alleges that it "supplied concrete on open account to Defendant from approximately October 30, 1991 through October 25, 2004," that "Defendant did make payments on the account on June 30, 1992 in the amount of $5,000.00, December 29, 1995 in the amount of $105.03, July 10, 1998 in the amount of $229.95, and September 25, 2002 in the amount of $327.02," and that "Defendant has failed and refused to pay the [$92,968.57] balance on the open account."

The sole issue here is whether these "account stated" and "amount owed on open account" claims are subject to the UCC's four-year limitations period, MCL 440.2725, or the general six-year limitations period applicable to contract actions, MCL 600.5807(8). Defendant contends that because the underlying transactions were for the sale of goods, this action is subject to the UCC's four-year limitations period regardless of whether the action is pleaded as an "account stated" or "amount owed on open account" claim. Plaintiff contends that "account stated" and "amount owed on open account" claims are independent causes of action governed by the general six-year limitations period, without regard to the underlying nature of the transactions giving rise to the claims.

The majority agrees with plaintiff that the six-year limitations period applies to both the "account stated" and "amount owed on open account" claims. I agree with the majority and plaintiff that the six-year limitations period applies to the "account stated"

3

claim, but I agree with defendant that the UCC's four-year limitation period applies to the "amount owed on open account" claim.

## II. "ACCOUNT STATED" CLAIM

I agree with the majority that an "account stated" claim results from a separate and distinct bargaining process in which the parties sum up all the credits and debits flowing between themselves, "strike a balance" or settle, and then enter into an agreement that the debtor shall pay the creditor a particular amount. *Leonard Refineries, Inc v Gregory*, 295 Mich 432, 437; 295 NW 215 (1940). When the parties "strike a balance" or settle, it closes the open account, transforming it into an account stated, and the ascertained balance is subject to a new limitations period because it constitutes an original and separate demand. *Id.* Any subsequent judicial inquiry concerns only whether the parties have in fact agreed on the amount due and whether that amount remains due. See *Pelavin v Fenton, Davis & Boyle*, 255 Mich 680, 683; 239 NW 268 (1931).

In other words, when an account becomes "stated," it establishes a *new* cause of action against the debtor in the same manner that a debtor giving a promissory note to a creditor for an antecedent debt would create a new cause of action against that debtor independent of the original indebtedness. *White v Campbell*, 25 Mich 463, 468 (1872) ("[T]he agreed statement serves in place of the original account, as the foundation of an action. . . . The effect of the operation is said to be much the same as though the debtor had given his note for the balance[.]"). Accordingly, because the parties' independent agreement here concerning the amount due under the account establishes the basis for defendant's liability on the "account stated" claim, and because that liability is not based

4

on the underlying transactions in goods out of which the original account stemmed, I agree with the majority that the six-year limitations period governing general contract actions in MCL 600.5807(8) applies to the "account stated" claim, not the four-year limitations period in § 2-725 of the UCC that would apply to the underlying transactions in goods out of which the original account stemmed.

I disagree, however, with the majority's discussion concerning when an "account stated" claim *accrues* for statute of limitation purposes. Specifically, I disagree with the majority that an "account stated" claim accrues "upon an adjustment of the parties' respective claims against one another," or "'when assent to the statement of account is either expressed or implied . . . .'" *Ante* at 16 n 53, citing *White*, 25 Mich at 468. In Michigan, a breach of contract claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. In other words, the limitations period begins to run on the date the contract is breached, not when the contract is formed as a result of the parties' "assent" to the statement of account. The majority, I believe, misreads this Court's statement in *White*, which merely describes the manner in which an open account is converted into an account stated, i.e., an open account becomes an account stated when there is "an adjustment of . . . claims." *White*, 25 Mich at 468. The sentence on which the majority relies does not describe *when* an "account stated" claim accrues.[2]

---

[2] This becomes clear when the sentence on which the majority relies is read in context:

5

## III.  "AMOUNT OWED ON OPEN ACCOUNT" CLAIM

Further, I agree with the majority that an open account constitutes a commercial arrangement in which a seller allows a customer to buy on credit without a formal borrowing agreement or other guarantee as to the customer's payment.  That is, under an "open account" arrangement, the seller delivers goods to the customer and a series of credit charges are made on the customer's open account without an express agreement between the seller and the customer as to when the customer will pay the seller for the goods.  I further agree with the majority that the critical factor in deciding whether an account is open is whether the terms of payment are specified by the parties' agreement or are left open and undetermined, and that there can be no open account where the parties have an express agreement defining their liabilities.

---

The conversion of an open account into an account stated, is an operation by which the parties *assent* to a sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts.  That it has taken place, may appear by evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them.  When accomplished, it does not necessarily exclude all inquiry into the rectitude of the account. The parties may still impeach it for fraud or mistake. But so long as it is not impeached, the agreed statement serves in place of the original account, as the foundation of an action.  It becomes an original demand, and amounts to an *express* promise to pay the actual sum stated.  *The creditor becomes entitled to recover the agreed balance, in an action based on the fact of its acknowledgment by the debtor, upon an adjustment of their respective claims*:  *Ashley v. Hill*, 6 Conn., 246 [1826].  The effect of the operation is said to be much the same as though the debtor had given his note for the balance: *Bass v. Bass*, 8 Pick., 187 [Mass, 1829]. [*White*, 25 Mich at 468 (emphasis added to the relevant sentence).]

6

I disagree with the majority, however, as to the limitations period that applies when a seller sues a customer for the amount owed on open account and, as here, the open account has arisen from a UCC sale of goods. The majority concludes that the six-year limitations period governing general contract actions in MCL 600.5807(8) applies to an "amount owed on open account" claim when the account has arisen from a UCC sale of goods, but fails to provide a sufficient basis for so concluding. The majority provides almost no analysis concerning why the UCC's four-year limitations period does not apply to such a claim. It merely mentions the relevant UCC statutory language once, in conclusory fashion, stating only that "[a]n open account claim is not a breach of contract action for the sale of goods . . . ." *Ante* at 24. The majority does not offer any analysis of the relevant statutory language or offer any support for this assertion.

"The stated purposes of the [UCC] are '(a) to simplify, clarify and modernize the law governing commercial transactions; (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; [and] (c) to make uniform the law among the various jurisdictions.'" *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512, 519; 486 NW2d 612 (1992), quoting MCL 440.1102(2) (second alteration in original).

"To achieve these goals, Article 2 of the [UCC] governs the relationship between the parties involved in 'transactions in goods.'" *Neibarger*, 439 Mich at 519, quoting MCL 440.2102. Article 2 recognizes that modern commercial transactions may be conducted with little formality and few written agreements. Indeed, no writing is required when the goods have been received and accepted by the buyer. MCL

7

440.2201(3)(c). The parties do not even need to agree on the price term to have effected

a valid transaction. MCL 440.2305(1) (price term can be left open and "[i]n such a case

the price is a reasonable price at the time for delivery"). The UCC also recognizes that

sellers will often sell goods to buyers on open account. That is, it recognizes that sellers

will agree to sell goods to buyers on credit and deliver the goods to buyers before

receiving any payment. As an example, MCL 440.2310(d) states that if "the seller is

required or authorized to ship the goods on credit, the credit period runs from the time of

shipment but postdating the invoice or delaying its dispatch will correspondingly delay

the starting of the credit period." And as a further example, MCL 440.2511(1) states that

"[*u*]*nless otherwise agreed* tender of payment is a condition to the seller's duty to tender

and complete any delivery." (Emphasis added.) As stated in the official comments to the

UCC:

> The requirement of payment against delivery in subsection (1) is
> applicable to non-commercial sales generally and to ordinary sales at retail
> although it has no application to the great body of commercial contracts
> which carry credit terms. Subsection (1) applies also to . . . contracts which
> look to shipment by the seller but contain no term on time and manner of
> payment . . . . [Thomson West, Uniform Commercial Code: Official Text
> and Comments (2012-2013 ed), § 2-511, p 125.][3]

Thus, article 2 fully recognizes that there will be breaches of contracts for the sale of

goods sold on open account.

The limitations period provision for article 2 provides:

---

[3] See also, e.g., MCL 440.2702(2) ("Where the seller discovers that the buyer has *received goods on credit* while insolvent . . . .").

8

(1) An action for breach of *any contract for sale* must be commenced within 4 years after the cause of action has accrued. . . .

(2) A cause of action accrues when the breach occurs . . . . [MCL 440.2725.]

MCL 440.2106(1) defines "contract for sale" as including

both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price [MCL 440.2401]. A "present sale" means a sale which is accomplished by the making of the *contract*. [Emphasis added.]

MCL 440.1201(11)[4] defines "contract" as follows:[5]

"Contract" means the total legal obligation which results from the parties' *agreement* as affected by this act and any other applicable rules of law. (Compare "Agreement".) [Emphasis added.]

And MCL 440.1201(3)[6] defines "agreement" as follows:

"Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this act [MCL 440.1205 and MCL 440.2208]. Whether an agreement has legal consequences is determined by the provisions of this act, if applicable; otherwise by the law of contracts [MCL 440.1103]. (Compare "Contract".)

Applying these definitions, the question is whether an "amount owed on open account" claim constitutes "[a]n action for breach of" "the total legal obligation that

---

[4] The MCL 440.1201(11) definition of "contract" was superseded effective July 1, 2013, by the substantially similar definition now found at MCL 440.1201(2)(*l*).

[5] MCL 440.1201 is part of article 1. However, article 2 of the UCC states that "article 1 contains general definitions and principles of construction and interpretation applicable throughout [article 2]." MCL 440.2103(4).

[6] The MCL 440.1201(3) definition of "agreement" was superseded effective July 1, 2013, by the substantially similar definition now found at MCL 440.1201(2)(c).

9

results from the parties' agreement" to "pass[] . . . title [of goods] . . . for a price[.]"[7] In contrast to an "account stated" claim, in which the basis for liability is the parties' independent agreement concerning the amount due under the account, the basis for liability in an "amount owed on open account" claim is the *underlying transactions* that comprise the account. In "an open account . . . the items composing it must be proved" because the parties have not reached an independent agreement as to the amount due under the account. *A Krolik & Co v Ossowski*, 213 Mich 1, 7; 180 NW 499 (1920). Because the plaintiff must instead prove its right to collect on each underlying transaction comprising a part of the account balance, the "amount owed on open account" claim is simply the equivalent of a suit for breach of the legal obligations that result from the parties' discrete transactions that individually comprise the account. Accordingly, when the underlying transactions pertain to an agreement to pass title of goods from the seller to the buyer for a price, MCL 440.2106(1), as they do in this case, the four-year limitations period of MCL 440.2725(1) must be applied.[8]

---

[7] The majority never addresses this particular question or considers this language derived from the UCC.

[8] This conclusion is supported by the overwhelming weight of authority in this country. See, e.g., *May Co v Trusnik*, 54 Ohio App 2d 71, 74-75; 375 NE2d 72 (1977) ("[A]n action brought by a merchant for the price of items purchased by a customer on his or her charge account is governed by the four-year statute of limitations in U.C.C. 2-725. It is an action for breach of the sales contract rather than an action to collect a debt.") (citations omitted); *Troy Boiler Works, Inc v Sterile Technologies, Inc*, 777 NYS 2d 574, 578; 3 Misc 3d 1006 (S Ct, 2003) (stating that the UCC article 2 limitations period applies to "any . . . claim on an account . . . since the underlying transaction was for the sale of goods and any such claims relate to and cannot be divorced from the underlying sales transaction"); *Advance Tufting, Inc v Daneshyar*, 259 Ga App 415, 417; 577 SE2d

In its analysis of the "amount owed on open account" claim, the majority asserts, erroneously in my view, that "[a]n open account claim is not a breach of contract action for the sale of goods; it is an action to collect on *the single liability stemming from the parties' credit relationship* regardless of the underlying transactions comprising the

90 (2003) (applying the UCC article 2 limitations period to "the instant suit on an open commercial account detailing transactions in which goods were sold"); *Troyer v Cowles Prod Co, Inc*, 732 NE2d 246, 247 (Ind App, 2000) (applying the UCC article 2 limitations period to a "claim on account arising from goods sold and delivered . . . but not yet paid for"); *Moorman Mfg Co of California, Inc v Hall*, 113 Or App 30, 32; 830 P2d 606 (1992) (applying the UCC article 2 limitations period "to an account . . . claim involving an underlying sale of goods"); *Deluxe Sales & Service, Inc v Hyundai Engineering & Constr Co, Ltd*, 254 NJ Super 370, 374-377; 603 A2d 552 (1992) (applying the UCC article 2 limitations period to an action seeking to collect amounts due on open an account); *Rivers Machinery Co, Inc v Barclay Int'l, Inc*, 553 So 2d 579, 580 (Ala, 1989) (applying the UCC article 2 limitations period to a seller's action against a buyer for failing "to pay the invoices for the period of May 5, 1982, through August 23, 1983"); *Sprague & Henwood v Johnson*, 606 F Supp 1564 (WD Va, 1985) (applying the UCC article 2 limitations period to the seller's action to recover a debt on an open account); *Greer Limestone Co v Nestor*, 175 W Va 289, 291, 293; 332 SE2d 589 (1985) (applying the UCC article 2 limitations period in an action "to recover the remaining balance on an [open] account" comprised of "transactions involving the sale of goods"); *Hughes v Collegedale Distrib*, 355 So 2d 79 (Miss, 1978) (applying the UCC article 2 limitations period to an action arising out of the purchase of health foods on an open account); *Sesow v Swearingen*, 552 P2d 705, 706 (Okla, 1976) (applying the UCC article 2 limitations period to a "suit on an open account established by the sale of goods"); *Big D Serv Co, Inc v Climatrol Indus, Inc*, 523 SW2d 236 (Tex, 1975) ("[T]he four-year statute of limitations provided for in [article 2 of the UCC] should be applied to suits on sworn accounts . . . in the context of an action for breach of a contract for sale. Suits on sworn accounts which are not founded on breach of contract for sale are not governed by this statute."); *Kinsey v Hubby-Reese Co, Inc*, 530 SW2d 846, 846-847 (Tex Civ App, 1975) ("Suits on open accounts such as the instant case are governed by [the UCC article 2 limitations period] . . . ."); *Wilson v Browning Arms Co*, 501 SW2d 705, 706 (Tex Civ App, 1973) (same); *Aluminum Co of America v Electro Flo Corp*, 451 F2d 1115, 1116 (CA 10, 1971) (applying the UCC in a suit brought "on an open account for goods sold and delivered"); see also 49 ALR 5th 1, § 10[a], pp 130-135 (discussing actions to collect on debt or open account in which the UCC limitations period was applied). Indeed, I am unaware of any authority reaching a contrary conclusion on this issue.

11

account." *Ante* at 24 (emphasis added). But the very definition on which the majority relies for the emphasized language undermines the majority's conclusion. Citing Black's Law Dictionary (7th ed), p 19, the majority defines an "open account" as "1. [a]n unpaid or *unsettled* account. 2. [a]n account that is left open for ongoing debit and credit entries and that has a fluctuating balance *until either party finds it convenient to settle and close, at which time there is a single liability*." *Ante* at 8 (emphasis added) (citation and quotation marks omitted). As this definition makes clear, an "open account" is one open to dispute, where nothing has occurred to bind either party by the account statements. The very essence of an open account is that there is no "single liability" because the account has not been settled and closed. See *ante* at 8 ("This Court has characterized an open account as 'one which consists of a series of transactions and is continuous or current, and *not closed or stated*.'") (emphasis added) (citation and quotation marks omitted).[9]

The majority employs this "single liability" definition to assert that the underlying transactions comprising the account are somehow not the actual source of liability for an

---

[9] In contrast, an account with a "single liability" is *an account stated*. Indeed, an account that has been closed and settled is precisely the type of account needed for an "account stated" claim. *A Krolik & Co*, 213 Mich at 7 ("An account stated means a balance struck between the parties on a settlement; and where a plaintiff is able to show that the mutual dealings which have occurred between the parties have been adjusted, *settled*, and a balance struck, the law implies a promise to pay that balance.") (citation and quotation marks omitted); *White*, 25 Mich at 468 ("If the account had ceased to be an open one, it must have been because the circumstances had converted it into an account stated. There is no suggestion that the balance had been adjusted in any way, and consequently, the account could not have been settled.").

"amount owed on open account" claim, because all the underlying transactions merge into one "action on an open account" to collect on the "single liability." *Ante* at 24. This, however, is incorrect. Again, an account stated, but not an open account, results in a single liability. The majority even implicitly recognizes in its discussion of the "account stated" claim that, absent an account stated, the causes of action based on the underlying transactions remain viable: "The account stated is a new, independent cause of action superseding and merging the *antecedent causes of action* represented by the particular items included in the computation." *Ante* at 12 (emphasis altered) (citation and quotation marks omitted).

This same principle was recognized by this Court in *Phelps v Abbott*, 116 Mich 624, 625; 74 NW 1010 (1898), in which we held that an open account does not constitute a single claim or a single cause of action, explicitly rejecting

> the claim of the defendant that a debt due upon a continuous account of book entries, made in the ordinary course of dealing is entire, and cannot be split up into separate and distinct demands, so as to form the basis of several suits; that an open account containing many items, all of which are due, constitutes but one claim, and one right of action.

Likewise, in *Kruce v Lakeside Biscuit Co*, 198 Mich 736, 742; 165 NW 609 (1917), this Court acknowledged that, under *Phelps* and other cases, separate suits could be maintained on each transaction comprising an open account. In *A Krolik & Co*, 213 Mich at 7-8, citing *Phelps*, 116 Mich 624, this Court reaffirmed that "[t]he right to bring separate suits upon claims embraced in an open account has been recognized," holding that the "[p]laintiffs' claim was not an open account. It constituted an entire demand. Separate actions could not be brought upon it."

13

In furtherance of its argument that the underlying transactions comprising the open account are somehow not the actual source of liability, the majority asserts that "these ['amount owed on open account' suits] are premised on the debt due on the account and rarely discuss the underlying transactions, except to the extent that the transactions provide a defense to the debt." *Ante* at 23. This, however, is also incorrect. Many cases discuss the underlying transactions because, again, these transactions are the source of liability for an "amount owed on open account" claim and, if the transactions are disputed, they must be proved in order for the plaintiff to recover on an "amount owed on open account" claim. For example, in *Holser v Skae*, 169 Mich 484, 486; 135 NW 260 (1912), the plaintiff sued to recover a $352.87 balance that the defendant allegedly owed on an open account consisting of $5,152.47 worth of charges and $4,799.60 worth of credits. One item of charge was for "'plumbing and heating as per contract'" and amounted to $3,151.25. *Id.* "The only matter disputed and put in issue by defendant was the heating and plumbing contract." *Id*. at 487. Specifically, the defendant argued that the plaintiff had failed "to properly perform the contract" by failing to install "the heating system to conform with the specifications . . . ." *Id.* The defendant sought $271.48 of "recoupment," which represented his costs in repairing the heating system. *Id*. The jury allowed the claim and deducted the $271.48 "from plaintiff's full claim, rendering a verdict for the balance in his favor." *Id.* On appeal, the plaintiff argued:

> In behalf of the plaintiff, it is claimed there could be no recoupment for the reason that this action is to recover a balance due on an open account between the parties and not on a part of the contract; that payments were made and credited from time to time on such open account as a whole, and plaintiff now sues on such account to recover a general balance

14

remaining unpaid. One item of plaintiff's bill of particulars going to make up his account is this contract for plumbing and heating. *He must prove it in order to recover.* Defendant's counterclaim is comprehended in, and connected with, and grows out of, said contract. It is a familiar rule that any damages may be recouped for which a cause of action growing out of the same transaction lies at the time of pleading. Plaintiff cannot defeat a right to recoup on a contract *which he must prove in order to recover*, by including other items with it in his declaration and making a general claim for balance due on the whole under an open account. [*Id*. at 488.][10]

Indeed, the majority itself appears to acknowledge that, in contrast with an "account stated" claim, in which the underlying transactions that make up the account are irrelevant, the underlying transactions in an "amount owed on open account" claim are not irrelevant and must be proved:

> [T]he caselaw defining [an "amount owed on open account" claim] is far less developed than the caselaw addressing accounts stated. This may be because a suit on an open account is, from a creditor's perspective, a less desirable claim than an action on an account stated. In an action on an account stated, the creditor must present proof of the debtor's express or implied assent to the balance due. Upon such proof, the underlying transactions become irrelevant. In an action on an open account, however, there is no assent to a balance due. Thus, *the creditor may be required to establish the validity of the entries in the account.* [*Ante* at 17-18 (emphasis added).]

---

[10] See *A Krolik & Co*, 213 Mich at 5 ("[T]he advantage which a creditor is considered to have in having his account stated—the amount fixed or determined by agreement, expressed or implied—over having an open account where the items composing it must be proved, is waived by the creditor where his action is brought and defended upon his account as an open account."); *Snyder v Patton & Gibson Co*, 143 Mich 350, 352-353; 106 NW 1106 (1906) (concluding that it was proper for the trial court to submit evidence to the jury regarding the underlying transactions); *Joslin v Cook*, 341 Mich 236; 67 NW2d 56 (1954) (holding that the plaintiff had proved "several transactions" by the preponderance of evidence).

15

In the instant case, in order for plaintiff to "establish the validity of the account" and prove its "amount owed on open account" claim, it must establish as fact that it completed each and every disputed "contract for sale" that comprises the open account and that defendant is in breach of the same.[11]

The majority states:

> Justice MARKMAN, similarly to the out-of-state authority on which he relies, recognizes that article 2 of the UCC governs individual sales on credit but declines to acknowledge a distinction between individual sales on credit and serial sales on credit that lack an express agreement for the periodic payment of money that are melded into an account. Any lack of statutory analysis in this opinion stems from the absence of any express mention of actions on accounts in article 2 of the UCC. As previously discussed, this Court's treatment of these collection actions has been anything but a model of clarity and consistency, and the disagreement between Justice MARKMAN and the majority of this Court is not an unreasonable one. [*Ante* at 23 n 69]

First, with all due respect, I do not "rely" on out-of-state authority for my conclusion. I rely on the relevant statutory language of the UCC and the abundant authority of *this state* that I have discussed throughout this opinion. Second, I fully acknowledge individual sales on credit, and I also fully acknowledge that multiple

---

[11] In order to recover the amount due on an open account, the plaintiff may file and serve on the defendant an affidavit of the amount due with a copy of the account annexed to the affidavit, together with the complaint, and the affidavit shall be deemed prima facie evidence of the alleged indebtedness, unless the defendant files an answer and supporting affidavit denying the indebtedness and serves these documents on the plaintiff or his attorney. MCL 600.2145. Plaintiff filed and served on defendant such an affidavit along with a copy of the account and complaint. Defendant filed and served on plaintiff an answer and supporting affidavit denying the indebtedness. Thus, plaintiff will have the burden to prove as fact that it completed each and every disputed "contract for sale" that comprises the open account and that defendant is in breach of the same.

individual sales may be made on credit absent an express agreement as to any payment terms, periodic or otherwise. What I do not acknowledge, however, and what the authority of this state and every other state does not appear to acknowledge, is that any of these circumstances can ever become "melded" into an open account.

Finally, the majority's conclusion that "[a]n open account claim generally accrues *on the date of each item proved in the account*," *ante* at 25 (emphasis added), directly contradicts its own "single liability" theory. How can there be a "single liability" when the statute runs on each item individually? The majority does not say. Notably, the authority on which the majority relies for its conclusion that "[a]n open account claim generally accrues on the date of each item proved in the account," *ante* at 25, directly contravenes the majority's "single liability" theory:

> In the case of an open running account which is not also a mutual account, so far as the statute of limitations is concerned, the cause of action arises from the date of each item, and they are severally barred when as to them the statute has run. *However, there is some authority that where all the items of a unilateral account constitute a single demand, the statute begins to run from the date of the last item*, and the rule may be changed by statute so that, if the last item in the account falls within the period of limitation, it draws with it all the other items. [1 Am Jur 2d, Accounts and Accounting, § 22, p 644 (citations omitted) (emphasis added).]

Again, as already discussed, this Court has expressly rejected the argument that an "amount owed on open account" claim constitutes a single demand, accrues on the date of the last item entered into the account, or draws with it all debts accrued before that

17

time. *Phelps*, 116 Mich at 625.[12]  Although the majority believes that an "amount owed on open account" claim constitutes a "single demand," it does not explain why it is not applying the rule set forth in the very authority it invokes that is *applicable* "where all the items of a unilateral account constitute a single demand."  See 1 Am Jur 2d, Accounts and Accounting, § 22, p 644.  Further, in its discussion of the hypothetical merchant, see *ante* at 24, the majority seems to *rely* upon the very rule that it is not applying because it implies that an "amount owed on open account" claim draws with it all debts accrued before that time:

> Recognition of an action on an open account as an independent claim that arises out of the course of dealing between a creditor and debtor also promotes commerce without encouraging creditors to file lawsuits to preserve their right to collect on debts.  Assume for example that a merchant sold goods and services on account whereby goods and services would be regularly delivered to a purchaser who in turn made sporadic payments in varying amounts as the relationship developed.  As the parties' relationship nears its fourth year, the merchant would have to insist on

---

[12] Indeed, many other decisions of this Court also make it clear that an "amount owed on open account" claim does not constitute a single demand or encompass all debts accrued before that time.  With the exception of when the parties have a mutual and open account current, this Court has treated the limitations period as if it arose from the date of each item entered into the account.  See, e.g., *In re Hiscock Estate*, 79 Mich 536, 537-538; 44 NW 947 (1890) (concluding that transactions occurring more than six years before the commencement of an "open account" claim are barred by the statute of limitations, except in cases of mutual and open account); *McKnight v Lowitz*, 196 Mich 368, 376-377; 163 NW 94 (1917) (holding that when the plaintiff had filed suit on March 26, 1915, the limitations period had run on his September 3, 1908, transaction but not his September 8, 1910, transaction, when it did not appear that he had a mutual and open account against the defendant); *Hollywood v Reed*, 55 Mich 308, 310-311; 21 NW 313 (1884) (holding that transactions that occurred more than six years before the commencement of suit would be barred by the statute of limitations unless the jury were to find that a disputed payment had been made, in which case the account would be open and mutual and the plaintiff could then recover on the whole account).

18

settlement of the account or risk the possibility that all or part of the balance due on account could be declared uncollectable after the four-year limitations period on the sale of goods expires. Even if this merchant dealt exclusively in the sale of services, he would face the same dilemma in year six. [*Ante* at 23-24.]

It is unclear from the majority's discussion why the merchant would not face this very same "dilemma" in "year six" given its holdings that a six-year limitations period applies to an "amount owed on open account" claim and that "[a]n open account claim generally accrues on the date of each item proved in the account." *Ante* at 25. Is this because the claim draws with it all debts accrued before that time? The majority does not say.

Regarding the majority's discussion of the hypothetical merchant, I believe that the majority misapprehends the nature of the open account. The merchant would have four years from the date of each transaction to sue on that transaction. The merchant could apply the debtor's payments against the oldest transactions, unless the debtor indicated a contrary intent. Operating in this fashion, the merchant would not have to "insist on settlement of the account" when the parties' relationship neared its fourth year, because the debtor's "sporadic payments in varying amounts" would presumably have satisfied the oldest transactions that are approaching their four-year limitations period. The merchant would only need to sue the debtor if the debtor's account was delinquent with regard to *four years'* worth of transactions.[13]

---

[13] The majority's decision to apply a six-year limitations period to an "amount owed on open account" claim whereas a four-year limitations period is to be applied to the *underlying* sales transactions is problematic. If an underlying sales transaction has a four-year limitations period, but an "amount owed on open account" claim based on that sales transaction has a six-year limitations period, a seller can wait five years to bring an

19

In sum, the majority fails to recognize that the *presence* in an "account stated" claim of an independent agreement concerning the "single liability" due under the account, and the *absence* of an independent agreement concerning any "single liability" in an "amount owed on open account" claim, is a *critical* distinction that determines which limitations period applies to each claim. That is, when the parties' independent agreement concerning the amount due under the account constitutes the basis for liability (an "account stated" claim), the general six-year limitations period applicable to contract actions applies. When there is no independent agreement, and thus the basis for liability continues to be the underlying transactions in goods that comprise the account (an "amount owed on open account" claim), the four-year limitations period of the UCC applies, for there is no separate and distinct basis for the claim apart from the individual transactions in goods. For this reason, the majority is incorrect, in my judgment, in its assertion that "an open account claim is no more an action for a breach of a contract for sale than is an account stated claim." *Ante* at 24 n 72.

## IV. CONCLUSION

I agree with the majority that an "account stated" claim arising out of transactions in goods is subject to the general six-year limitations period applicable to contract actions, MCL 600.5807(8). Thus, I concur with the majority's decision to reinstate

---

"amount owed on open account" claim against the buyer, and the buyer will be unable to bring a counterclaim for breach of the underlying transaction (for example, breach of the warranty of merchantability) because the buyer's separately applicable four-year limitations period will have already run.

plaintiff's "account stated" claim. However, I disagree with the majority that plaintiff's "amount owed on open account" claim is subject to the same limitations period. Rather, the latter claim is simply the equivalent of a suit for breach of the underlying transactions in goods that comprise the account and is, therefore, subject to the four-year limitations period set forth in article 2 of the UCC, MCL 440.2725. Thus, I respectfully dissent from the majority's decision to reinstate plaintiff's "amount owed on open account" claim. Accordingly, I would remand to the trial court so that plaintiff could proceed exclusively on its "account stated" claim.

Stephen J. Markman

VIVIANO, J., took no part in the decision of this case.